### In re TANG TUN et ux.

### In re GANG GONG.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1909.)

#### No. 1,633.

HABEAS CORPUS (§ 23*)—CHINESE EXCLUSION ACTS—REVIEW OF ORDERS OF DEPORTATION—JURISDICTION OF COURTS.

Where a person of Chinese descent asks admission to the United States upon the ground that he is a native-born citizen thereof, and the lawfully designated executive officers find that he is not, such action should be treated by the courts as having been by a competent tribunal, with due process of law, and as final and conclusive, in the absence of a showing that there was abuse of discretion on the part of such executive officers; and, unless such abuse of discretion is shown, a court cannot entertain habeas corpus proceedings based solely on the ground of applicant's alleged citizenship.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 23.*]

Morrow, Circuit Judge, dissents on the ground that the question involved in the case is a constitutional one, and the court was therefore without jurisdiction of the appeal.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

For opinion below, see 161 Fed. 618.

The appellees, who are Chinese persons, were denied admission into the United States after investigation by the inspector in charge at the port of Sumas, in the state of Washington, and were by him ordered returned to China, whence they came. An appeal from the inspector's decision was taken to the Secretary of Commerce and Labor, and by that officer affirmed. While detained at Sumas in pursuance of the order of deportation, the appellees, through one Woo Gen, filed in the court below a petition praying for a writ of habeas corpus, in which petition it was, among other things, alleged that Tang Tun was born in the year 1879 at Seattle, in the then territory of Washington, of Chinese parents who then resided and were permanently domiciled in that city; that in the year 1884 he departed, with his parents, for the empire of China, and remained there 15 years; that in 1897 he returned to the United States, and, after examination, was admitted thereto at the port of Port Townsend, state of Washington, by J. C. Saunders, then collector of customs there; that after being so admitted he entered the employment of the mercantile firm of Wah Chong Company, of the city of Seattle, and remained in such employment as a clerk and general assistant until 1903, when he acquired an interest in that firm, which he has ever since retained and now owns; that in September,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1905, he again returned to China for the purpose of getting married, and during that visit was in fact married, in accordance with the laws of China and the consular requirements of the United States, to the appellee Leung Kum Wui; that in June, 1906, he again returned to the United States and sought entry for himself and wife at the port of Sumas, state of Washington, which application was refused by the inspector; that thereafter an appeal was prosecuted from the said order of rejection to the Secretary of Commerce and Labor, and such proceedings were had thereon that the said order was in all things affirmed, in consequence of which the appellees were held by the said inspector at Sumas for deportation to China.

The petition for the writ further alleged, in effect: That the examination of the witnesses, designated by the petitioner as persons able to identify the appellee Tang Tun as a native-born citizen of the United States, was conducted by the inspector during his absence, "so as to prevent said witnesses from completely and accurately identifying your petitioner as the person who had been born and acquired a permanent residence in the United States, and was further conducted by said inspector in such a manner as to prevent said witnesses from testifying as to the facts within their own knowledge, and said inspector failed and neglected to take in the proper manner, or at all, the testimony of the witnesses designated by your petitioner. That said inspector in charge, in arriving at the conclusions expressed in said order rejecting the application for admission of your petitioners, used and gave credence to, and placed reliance upon, testimony of witnesses who were not sworn before giving testimony. That said inspector in charge, in order to reach the conclusion that your petitioners were not entitled to entry, had recourse to and made use of secret documents, papers, and files which were not made a part of the record when submitted to the applicants for their examination, or to their counsel, and which were not, and could not be, made a part of the record sent up on appeal to the Secretary of Commerce and Labor, but after being used by said inspector as aforesaid were secreted by him so as to prevent the fact of their illegal use being brought to the attention of the Secretary of Commerce and Labor on appeal. That, in conducting the inquiry into the status of these applicants, said inspector abused the discretion reposed in him by the laws of Congress and the regulations of the Department of Commerce and Labor, in that he refused to take in proper or legal manner, or at all, testimony of witnesses designated by these applicants, and in secretly making use of papers and documents outside the record, and disconnected therewith, and which were fictitious and false, and known to be such by said inspector at the time he had recourse to them. That for the purpose of influencing and prejudicing the mind of the Secretary of Commerce and Labor, and securing an affirmance of the order of rejection, said inspector in charge, Edsell, after the transmission of the record on appeal, privately communicated with him the substance of the unsworn testimony used by him as aforesaid, and the documents, papers, and records hereinabove referred to, and by reason of such communication the said Secretary affirmed the order rejecting the application of Tang Tun and Leung Kum Wui for admission, and thereby abused the discretion and authority vested in him by law and the regulations of his department. That there are a number of well-known and reputable people in the city of Seattle who are well acquainted with the applicant, Tang Tun, and with the fact that he is a native-born citizen of the United States, and who, if they had been given an opportunity, would so testify, and on a further, fair, and impartial hearing by the inspector in charge would testify not only that said applicant was born in this country of parents then permanently domiciled here, but also that he was engaged in the city of Seattle for a number of years in mercantile pursuits, and while so engaged, acquired an interest in the mercantile firm of Wah Chong Company."

The court below awarded a writ of habeas corpus, and the matter, subsequently coming on for hearing before the court, was submitted upon this written stipulation of the respective parties:

"That the record herewith submitted, to wit: The record in the appeal case of Tang Tun and Leung Kum Wui, from the files of the Bureau of Immigration and Naturalization of the Department of Commerce and Labor of the United States, certified to be such by F. P. Sargent, Commissioner General of

Immigration, together with exhibits numbered 1 and 2, 3, 4, 5, 6, none of which were shown to applicant or his counsel and have never been exhibited to applicant or counsel, and the identification papers of the alleged wife, Leung Kum Wui, and the papers setting forth the marriage of the two applicants, is the original record of the hearing upon the application of the said Tang Tun and Leung Kum Wui to enter the United States as a native-born citizen and wife, and the appeal thereon; that attached to said papers is a copy of a telegram from the Department of Commerce and Labor at Washington, D. C., to the immigration service at Sumas, Wash., dismissing said appeal, and a letter corroborating said telegram; also a letter from H. Edsell, said inspector, stating that nothing other than the said telegram and letter corroborating same was received from the said Department of Commerce and Labor at Washington, D. C., relative to the dismissal of said appeal; that said record filed herewith, with the said copy of telegram and letters, shows every fact which the parties hereto deem necessary to present to the above-entitled court in the consideration by the said court of the allegations of the abuse of discretion; that the said parties hereto rely wholly upon said record and said telegram and letters referred to for the purposes of determination by the court of the question of abuse of discretion as alleged in said application for a writ of habeas corpus aforesaid, and the order of reference in this case to the United States Commissioner A. C. Bowman is hereby modified in accordance with this stipulation.

"It is further stipulated and agreed that should the above-entitled court, after examining the record filed herewith, find that there has been no abuse of discretion, as set forth in the petition for a writ of habeas corpus in the above-entitled case, that the said writ issued therein shall be dismissed; should the above-entitled court find abuse of discretion as alleged, then testimony in the said case shall be taken as provided for in the general order of reference."

The court below by its judgment discharged the appellees from custody, from which judgment the present appeal comes.

Elmer E. Todd, U. S. Atty., and Charles T. Hutson, Asst. U. S. Atty., for appellant.

Kerr & McCord and J. C. Whitlock, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). In the case of the United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, it was adjudged by the Supreme Court that under the Chinese exclusion and the immigration laws, where a person of Chinese descent asks admission to the United States upon the ground that he is a native-born citizen thereof, and the lawfully designated executive officers find that he is not, such action should be treated by the courts as having been made by a competent tribunal, with due process of law, and as final and conclusive, in the absence of a showing that there was abuse of discretion on the part of such executive officers; and that in habeas corpus proceedings commenced thereafter, and based solely on the ground of the applicant's alleged citizenship, the court should dismiss the writ, and not direct new and further evidence as to the question of citizenship.

In the subsequent case of Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, the same court held, as we understand its opinion, that where such a person is given only a semblance of a hearing by the executive officers, and is by them arbitrarily denied an opportunity to prove his right to enter the country, a court should, by writ of habeas corpus, take jurisdiction of the case, in which event the first question to be determined is, whether the petitioner has in

fact been denied by the executive officers a fair opportunity to present his case; if not, the court can proceed no further. The Supreme Court, in the Chin Yow Case above referred to, further decided that the circumstance that the hearing before the executive officers may have been summary is of no consequence; that a denial of due process of law cannot be established by merely proving that the decision on the hearing that was had before such officers was wrong, and that jurisdiction in the courts can "not be established simply by proving that the Commissioner and the Department of Commerce and Labor did not accept certain sworn statements as true, even though no contrary or impeaching testimony was adduced."

Bearing in mind these rules of law by which we are, of course, controlled, we are to consider the statement embodied in the stipulation upon which the present case was submitted. That statement shows that Tang Tun was examined and testified at great length before the inspector at Sumas on the 23d of June, 1906; that he was re-examined and testified at length before the inspector on the 27th of the same month; that on July 2, 1906, two witnesses—S. F. Coombs and William B. Thompson—were called, sworn, and testified on behalf of the applicant, Tang Tun; that on July 5, 1906, the applicant for admission as a native-born citizen was further examined by the inspector, when he was questioned, and answered as follows:

"Q. Tang Tun, can you explain to me why the records at Port Townsend should show that you were rejected in May, 1897, when you claim that you were admitted in April, 1897? A. I was examined, and Saunders admitted me, but I don't know how he put it on the paper. I don't see how there could be two papers with his signature on, the one admitted and the other rejected. Q. Mr. Coombs and Mr. Thompson have been examined in your case, and their testimony is not satisfactory. Can you furnish any additional testimony as to your nativity? A. I was too small, and only my mother knows it. Q. Don't you know anybody in the United States besides Mr. Coombs and Mr. Thompson who knows the facts concerning your birth? A. Do you want Chinese or white people? Q. I would prefer white people. A. I was too small, and don't know anybody. I might have known some one, but now it has been so long that I don't remember them now. Q. You told me that you believed you once had a sister. Was that sister born before you or after you? A. She was younger. (After a pause) I don't know how it comes, but I think she was older than me. She was born before I was, but I am not sure. Q. How long did she live? A. I don't know. Some one told me, but I don't know myself. Q. Who told you? A. I forget."

It appears that the inspector then rejected the application of Tang Tun, as well as that of his wife, since her claim rested entirely upon that of the husband, in this order:

"The applicant presented at the time of his arrival at this port an identification paper setting forth that he had been admitted at Port Townsend, Washington, on April 20, 1897, as a native-born citizen of the United States. He subsequently secured from Chin Quong, the manager of the Wah Chong Co., of Seattle, Washington, a copy of the identification papers on which the said admission was alleged to have been granted—the said copy bearing the following indorsement over the alleged signature of J. C. Saunders, collector: 'Arrived at Tacoma, Washington, April 10th, '97, on Str. "Tacoma," from China, and admitted April 20/97.' The applicant at first stated that this indorsement had been placed on his paper at the time of his admission, Collector Saunders having written it in his presence and handed the paper back to him. He afterwards testified, however, that he was mistaken in that statement, having re-

called that he did not get the said indorsed paper until some time after his admission, when it was secured for him and given to him in the Wah Chong store by Chin Quong, the manager of the said store, who had arranged for his coming to the United States.

"The records of the Port Townsend office contain the original of the indorsed paper secured by the applicant from the Wah Chong store, and such original bears the following indorsement: 'Rejected May 25/97, J. C. Saunders, Collector.' This indorsement is supported by the other records of the Port Townsend office under case No. 12,343.

"It is a matter of record that another Chinaman and alleged native-born citizen of the United States who was rejected at the same time by the Port Townsend office, having arrived on the same ship with the applicant herein, was subsequently found in the store of the Wah Chong Co., was arrested, and after due hearing of his case before the courts was ordered deported to China, and was so deported. Further, it is a matter of record that a number of other Chinese were arrested at the same time as the deported Chinaman above mentioned, all having been found in the Wah Chong store, and all having been in possession of 'native-born citizen' papers bearing the alleged indorsement of Collector J. C. Saunders. Each was given due hearing before the proper courts, and each was deported to China by order of the court on a finding that the records of the Port Townsend office did not show the landing claimed.

"With a desire to treat the applicant justly, he has been given an opportunity to prove his claim of nativity, but has failed to furnish evidence which under the circumstances would justify his admission as a citizen of the United States.

"There appears in his application intimation that the applicant might make a claim that he had been a domiciled merchant in the United States. His own testimony as to his occupation prior to departure shows that during the three years immediately preceding his departure he was engaged chiefly as the driver of a wagon between the Wah Chong gardens and the wholesale houses of Seattle, delivering vegetables and making his home at the gardens.

"The applicant is therefore denied admission on the grounds:

"First. That his status has already been adjudicated by officers duly charged with the enforcement of the Chinese exclusion laws.

"Second. Though given an opportunity to show that injustice may have been done by the former finding in his case, the applicant has failed to furnish any evidence to support such a conclusion.

"Third. The applicant has not furnished sufficient evidence of any status by which he is entitled to admission to the United States.          H. Edsell,
                                                      "Chinese Inspector in Charge."

On the same day the inspector notified Tun in writing of the denial of his application, saying in his letter:

"This decision is not final. If you desire to avail yourself of the right of appeal to the Honorable Secretary of Commerce & Labor at Washington, through an attorney, or responsible representative, you may communicate with such representative, or your friends, either by letters or telegrams sent through this office, but your written notice of appeal must be filed within two days. Your signature and acknowledgment of the foregoing is requested."

Within the two days, to wit, July 7th, Tun, through an attorney, took an appeal to the Department at Washington from the decision refusing him admittance to the United States. The subsequent proceedings upon the appeal, disclosed by the record, are too voluminous to set forth in an opinion, but they show that on July 9th the attorney for Tun asked of and obtained from the inspector additional time, extending to July 20th, in which to take additional testimony in behalf of the applicant, and making in his letter this further request:

"That you send me an affidavit made in 1897, on which Tang Tun was admitted into the United States, by J. C. Saunders, Collector of Customs, at

Port Townsend, Washington. It is absolutely necessary that I have that paper in order to intelligently present the facts of the case on the part of Tang Tun. I do not understand that that affidavit belongs to your files in the case, but in the event I am in error, will return the same to you soon as testimony is taken."

This last-mentioned letter was preceded by one from the inspector to the applicant's attorney, in which the inspector said:

"With reference to our telephonic conversation on July 6, 1906, wherein you served upon me a verbal notice of appeal in the cases of Tang Tun and Leung Kum Wui, alleged native-born citizen of Seattle, and wife, respectively, I beg to call your attention to the fact that the written notice which you promised to forward me on Saturday has not yet arrived, nor have I received any formal written request for the additional time which you stated was necessary for the proper presentation of your clients' cases. I desire to give you every opportunity to prove the merit of the cases you represent, but must insist that the routine requirements be observed, as otherwise the records would go to the Department in an incomplete condition. Kindly forward at once the formal notice and request referred to."

On July 11th the inspector at Sumas wrote to the applicant's attorney this letter:

"J. C. Whitlock, Attorney at Law, Seattle, Washington.

"Sir: In compliance with your request over long distance telephone of yesterday morning, I am forwarding to Inspector in Charge Estell, Seattle, the paper on which your client Tang Tun is alleged to have been landed at Port Townsend, Washington, in April, 1897, as a native-born citizen. This action is taken in order that you may exhibit the said paper to a witness in behalf of your client, but you will not be permitted to remove the said paper from the custody of the officers of this Service.

"In preparing your affidavits and other documents incident to prosecution of this appeal, I will appreciate it if you will submit them in duplicate so that one copy may remain on file in this office and the other be forwarded to the Secretary of Commerce and Labor.

"On the strength of your assurance in our telephonic conversation of yesterday morning that you would need until July 20th to complete the showing you desire to make in behalf of your clients, I have granted you until that date to perfect your appeals."

And on the same day the inspector at Sumas wrote to the inspector at Seattle this letter:

"W. B. Estell, Inspector in Charge, Seattle, Washington.

"Sir: I beg to inclose herewith the paper on which Tang Tun, now an appellant at this port from my decision denying him admission to the United States as a native-born citizen of the United States, is alleged to have been admitted to the United States at Port Townsend in April, 1897. This paper is forwarded to your office at the request of the applicant's attorney and on his statement that he desired to exhibit it to a witness in order that the said witness could identify it in some manner. I have advised the said attorney—J. C. Whitlock—that he would not be permitted to remove the said paper from the custody of officers of this Service, but that he would be permitted to see the paper in your presence and to exhibit it to his witness.

"The witness he spoke of over the long-distance telephone yesterday morning was one Walter Bowen, who, I believe, was at one time employed in the office of Collector J. C. Saunders in the capacity of chief clerk, special deputy collector, or some similar position. I anticipate, therefore, that it is the attorney's intention to try by Mr. Bowen to establish the genuineness of Mr. Saunders' signature. If on receipt of Mr. Bowen's testimony or affidavit, I find that my expectation is realized, I will return the papers to you for examination of Mr. Bowen as to the signature of Mr. Saunders on certain other documents in my possession.

"In this connection I beg to acknowledge receipt of your letter of July 9, 1906, No. 2109, advising me that you are endeavoring to locate the affidavit of some white witness as to Attorney Whitlock's connection with alleged 'Saunders' papers. I am glad that you are making careful search, as I believe the said affidavit will prove a valuable exhibit in the government's case."

Additional testimony having been introduced on behalf of the applicant by C. W. Chamberlain, Walter Bowen, S. A. Brinker, J. C. Whitlock, Chin Quong, Robert Fitzhenry, and Walter Burritt, within a further extension of time allowed by the inspection officers, and the whole case, including the additional testimony so taken on behalf of the applicants, together with exhibits numbered 1, 2, 3, 4, 5 and 6, referred to in the aforesaid stipulation of the parties, finally and in due course reached the Department of Commerce and Labor, and was there argued in writing on behalf of the respective parties. In the argument on behalf of the inspector, exhibits 1, 2, 3, 4, 5, and 6 are thus described:

Exhibit 1 contained a photograph of Tang Tun, indorsed across the face thereof, "Arrived at Tacoma, Washington, Apl. 10, '97, on steamer 'Tacoma' from China and admitted Apl. 20, '97. J. C. Saunders, Collector."

Exhibit 2 were the original identification papers from the Port Townsend records presented by Tang Tun at the time of his application for admission in 1897, the same being numbered 12,345, and are the original copy of Exhibit 1, the photograph thereon being made from the same negative, but the indorsement across the face is, "Rejected May 25, '97. J. C. Saunders, Collector."

Exhibit 3 is a typewritten list from the Port Townsend records of the Chinese who arrived on the steamer Tacoma April 10, 1897, the said list having been prepared according to the custom prevailing in the office of Collector Saunders for the purpose of making memoranda as to the examination and disposition of each case, as it was considered by the collector on the ship, on the last page of which list appears, "Tang Tung—son Quong Lee, born, Seattle, rejected."

Exhibit 4 contains the papers of Ah Toye, a Chinese fellow passenger with Tang Tun on the steamer Tacoma, which arrived at Port Townsend April 10, 1897. He was rejected on May 20, 1897, and on June 19, 1902, was admitted, one of his witnesses being Mr. S. F. Coombs, also a witness in the case of Tang Tun.

Exhibit 5 is composed of the papers in the matter of Gin Goon, another fellow passenger of Tang Tun on the steamer Tacoma, arriving at Port Townsend April 10, 1897, and also rejected May 20, 1897. This exhibit also shows that Gin Goon was subsequently and in July, 1903, admitted upon a paper bearing an indorsement similar to that disclosed by Exhibit 1, showing the admission of Gin Goon at the time the records show him to have been rejected.

Exhibit 6 contains the papers in the case of Teft Mun, still another fellow passenger of the appellee Tang Tun on the steamer Tacoma, arriving April 10, 1897. He also was rejected on the same day on which the appellee's rejection is dated, May 25, 1897; nevertheless, on February 22, 1905, he was arrested on the premises of the Wah Chong Company, in Seattle, and presented to the officers a paper bear-

ing the alleged signature of J. C. Saunders, purporting to show his admission in April, 1897.

The foregoing descriptions of Exhibits 1, 2, 3, 4, 5, and 6 are but the statements of their contents in the argument of the inspector, filed with the Secretary of Commerce and Labor.

In the brief of the attorney for the applicants filed with the Secretary of Commerce and Labor, we find the following:

"We find that the inspector in charge at Sumas found it necessary, after delivering what might be termed a lecture to the appellant, apparently to justify himself for this order of rejection, proceeded to set out specific reasons therefor. The first of these reasons, namely, that the status of appellant had already been adjudicated by officials duly charged with the enforcement of the Chinese exclusion law, is rather hard to understand; what he means by it is rather hard to say. In the examination of Mr. Bowen, who was special deputy collector at the port of Port Townsend, under Mr. Saunders, we find the following:

"'Q. I will show you a paper, and will ask you if that is his signature—Collector Saunders'—upon which Tang Tun claims he was admitted by Collector Saunders in the year 1897, and will ask you if the signature across the face of it is that of Collector Saunders? A. I don't think there is any doubt about that. Q. Can you say positively that it is his signature? A. Yes, I would swear to it.'

"The paper referred to is that presented by Tang Tun, and upon which he claims to have been admitted to the United States by J. C. Saunders, Collector of Customs, in 1897. (This paper shows arrival at Tacoma on April 10, 1897, admitted April 20, 1897).

"There is another paper, however, in the case, which purports to show that the appellant herein arrived, admittedly, some time in the early part of the month of April, 1897, and was deported May 25, 1897. The testimony of Mr. Bowen clearly shows that there was no detention house for the keeping of Chinese, in the district of Puget Sound, at that time; that Collector Saunders used to board the steamers when they arrived at Port Townsend, and journey to Tacoma to the headquarters of the corporation (the N. P. Ry.) at Tacoma, which was the only Oriental line operating directly out of the Puget Sound ports in those days. There being a substantial conflict in the records, we have taken the testimony of Mr. Bowen to endeavor to clear up the discrepancies in these particulars, as he was connected with the Port Townsend office at that time.

"Summing up the entire evidence adduced in this case it would seem to an unbiased mind, all immaterial issues being eliminated, that Tang Tun has assumed the burden of proof in this case, and that the testimony in this case fairly preponderates on the side of the appellant; this being the case, he is certainly entitled to admission as a native-born American citizen. The apparent reason of Inspector Edsell's rejection of this appellant, and the cause of his making his general and special findings of fact, is the fact, though the officer is unconscious of it, that his mind seems to be poisoned with an animus directed at Chin Quong, manager of the Wah Chong Co. We do not deny that the testimony given by appellant, and that given by Chin Quong, differs slightly in some particulars, still, Honorable Secretary, you will agree with us when we say that oftentimes witnesses who are entirely honest in their statements make numerous errors as to what occurred at a certain time and place several years removed, and matters which at the time of their occurrence were not considered particularly significant. The inspector in charge at Sumas, on the contrary, seems to hold the contra view, thinking it is necessary for these witnesses to corroborate each other in every small detail. It would seem to any person who is familiar with the practical methods employed in the enforcement of the Chinese exclusion law here, that owing to the fact that Seattle has a very small Chinatown, Tang Tun, if he had made a surreptitious entry into the United States, would have fallen in the hands of the ever vigilant inspectors, and been promptly deported. On the contrary, it appears from the record and the testimony that Tang Tun landed here in April, 1897, and

remained here domiciled in the city of Seattle all of the time up to the month of September or October, 1905, when he left the United States of his own volition for a visit to the empire of China.

"After looking this case over thoroughly, and considering it from all standpoints, it is perfectly plain that the more likely side of the testimony is that given by the appellant and his witnesses. It therefore follows that error prejudicial to the rights of this appellant has been committed, and that the order of rejection and deportation made and entered in this case July 5, 1906, be reversed, vacated, and held for naught, and that Tang Tun be permitted to enter the United States, and again enjoy the inestimable heritage which is the right of every freeborn American.

"I wish now, very briefly, to consider the case of Leung Kum Wui, wife of appellant herein. I realize of course at the outset that this appeal will be predicated entirely upon the outcome of the appeal of Tang Tun, her husband, as she has no rights which do not come from him, and I claim none for her."

We have made the foregoing references to the proceedings before the executive officers in order to show that the hearing before them was neither summary nor arbitrary, and that, so far from being a mere semblance of a hearing, it was a protracted one, based on repeated extensions of time requested by the applicants, and on a very considerable quantity of evidence introduced by each side to the controversy. Under such circumstances we do not understand, in view of the law as declared by the Supreme Court in the cases hereinbefore referred to, that any court is authorized to review the action of the Department of Commerce and Labor in the matter of admitting or weighing evidence, or to consider whether the conclusions drawn by its officers were right or wrong.

The judgment of the court below is reversed and the case remanded, with directions to dismiss the proceedings.

MORROW, Circuit Judge (dissenting). In my opinion the question in this case is a constitutional question, and for the reason stated in the case of In re Can Pon (No. 1,625) 168 Fed. 479, I think the appeal should be dismissed.