## UNITED STATES v. SPRUNG.

(Circuit Court of Appeals, Fourth Circuit. February 20, 1910.)

### No. 958.

1. ALIENS (§ 53*)—DEPORTATION—CONSTRUCTION OF STATUTE—EFFECT OF PREVIOUS RESIDENCE IN UNITED STATES.

Under Immigration Act Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904 (U. S. Comp. St. Supp. 1909, p. 459), which provides that any alien who shall enter the United States in violation of law may be deported at any time within three years after the date of entry, the fact that an alien entering is a resident of the United States and left temporarily is immaterial, and the legality of the last entry is to be determined as though there had been no previous entry, with the right to deport thereafter if such entry is unlawful.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

2. ALIENS (§ 44*)—CLAIM OF CITIZENSHIP—JURISDICTION TO DETERMINE.

Congress has by the immigration statutes lawfully conferred upon executive officers final and exclusive jurisdiction to hear and determine

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

whether any particular individual is an alien or a citizen in so far at least as such determination depends upon conclusions which may be reached upon disputed questions of fact.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 102–104; Dec. Dig. § 44.*]

Pritchard, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Virginia.

Habeas corpus proceeding by Sadie M. Sprung against the Immigrant Inspector at Norfolk. From an order discharging petitioner, the United States appeals. Reversed.

L. L. Lewis, U. S. Atty.

Samuel H. Kunstlich, for appellee.

Before PRITCHARD, Circuit Judge, and ROSE and McDOW-ELL, District Judges.

ROSE, District Judge. The appellee will be called the petitioner. On May 25, 1909, she applied to the court below for a writ of habeas corpus to be directed to the United States immigrant inspector in charge at Norfolk. The writ issued. A return was made. A traverse was filed. A hearing was had. The court ordered that the petitioner be discharged. The United States appealed.

The pleadings show that the petitioner is a native of Austria. She came to this country about 1894. She has since made several trips to Europe. She returned from the most recent of these on May 4, 1909. Eighteen days afterwards she was arrested under a warrant of the Secretary of Commerce and Labor. It recited that upon evidence submitted it appeared that she was an alien, that she had entered the United States within three years for purposes of prostitution, and had since her entry been an inmate of a house of prostitution. The inspector was commanded to take her into custody and bring her before himself to enable her to show cause why she should not be deported. This hearing was had May 24, 1909. At the time of the return she was held to await the action of the Secretary of Commerce and Labor. The return alleged that she had originally entered the United States for the purposes of prostitution and had for a number of years led the life of a prostitute in various cities of this country. This portion of the return was not traversed. The traverse denied the allegation of the return that she had practiced prostitution since May 4, 1909, the date of her latest entry into the United States. The petition denied that she was an alien. It said that she was the wife of Otto Sprung, a naturalized citizen of the United States. The return asserted that she was not the wife of Otto Sprung, and was an alien.

The learned judge who sat in the court below held that the Secretary of Commerce and Labor had no jurisdiction to order the deportation of the petitioner because he had not acted within three years after her entry into the United States. Under the provisions of the Act of February 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), before its amendment by the Act of March 26, 1910, c. 128, 36

Stat. 263, the power of the Secretary of Commerce and Labor over alien prostitutes was limited to the period of three years after their entry into the United States. In the opinion of the court below limitations began to run from the date of her original entry into this country. In view of the admitted fact that she had been domiciled in the United States for the greater part of 15 years, it was immaterial that her return from her latest visit to Europe had taken place only 18 days before her arrest. In reaching this conclusion he relied upon Lau Ow Bew v. United States, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340; In re Buchsbaum (D. C.) 141 Fed. 221; United States v. Aultman Co. (D. C.) 143 Fed. 922.

In Lau Ow Bew's Case the petitioner was a Chinese merchant. He had been long domiciled in the United States and had been there engaged in business. He visited China. On his return to this country he was refused permission to land because he had not the certificate from the Chinese government required by an act of Congress to be obtained by a Chinese person other than a laborer who "shall be about to come into the United States." This certificate was to show, among many other things, the present and former occupation or profession of the person to whom it was issued, when, where, and how long he had pursued it, his place of residence, and, if a merchant, the nature, character and estimated value of the business carried on by him, prior to, and at the time of his application for a certificate. It was held that to ask that the Chinese government should give such a certificate to a merchant who had long been in business in the United States was "absurd and unreasonable." That government neither had nor ordinarily could acquire the knowledge of the facts to be certified. The treaty with China secured to Chinese merchants who had been lawfully domiciled in the United States the right of free ingress and egress and all other rights, privileges, and immunities enjoyed in this country by the citizens or subjects of the most favored nation. To say to a Chinese merchant lawfully domiciled amongst us, "You cannot return here after a visit abroad unless you comply with a condition which in all cases will be exceedingly difficult and in many, if not most, impossible," would be to show a contempt for treaty obligations. It was accordingly held that Congress could not be presumed to have intended that persons in like class with the petitioner in that case should procure such certificates as a condition of their return here. Congress shortly thereafter so amended the law as to leave to executive officials the determination of the right of a person claiming to be a domiciled Chinese merchant to re-enter this country. The Supreme Court thereupon pointed out that the decision in Lau Ow Bew's Case had ceased to be applicable. Lem Moon Sing v. United States, 158 U. S. 549, 15 Sup. Ct. 967, 39 L. Ed. 1082.

The two Federal Reporter cases cited by the judge below, viz., Buchbaum's Case (D. C.) 141 Fed. 221, and United States v. Aultman (D. C.) 143 Fed. 922, turned upon the construction of the words, "alien immigrant" used in the statutes then under consideration. They held that, when a domiciled alien returned from a visit abroad, he was not an "immigrant," although he was an "alien." After these deci-

sions had been rendered Congress struck the word "immigrant" out of the statutes. The Court of Appeals for the Second Circuit has examined the cases cited by the learned judge below as well as others to the same effect. It held that the omission of the word "immigrant" from the statute under which the proceedings in this case have been taken rendered them inapplicable. Ex parte Hoffman, 179 Fed. 839, 103 C. C. A. 327. The same conclusion had been previously reached by Judge Morris in the case of the United States v. Hook (D. C.) 166 Fed. 1007.

We are therefore of opinion that the action of the Secretary of Commerce and Labor was taken within the time limited by law.

The court below further held that, even if the proceeding was not barred by limitations, it was nevertheless one which, under the circumstances, the Secretary could not lawfully take. It was of opinion that, as Congress had no power to authorize the deportation of citizens by administrative process, the courts had jurisdiction to inquire and determine whether a claim to citizenship made by a person about to be deported as an alien was or was not well founded. It did not feel itself concluded by the finding of the executive officials that as a matter of fact the petitioner had never married Otto Sprung and was still an alien. The Supreme Court has, however, held that Congress has by the immigration statutes lawfully conferred upon executive officials final and exclusive jurisdiction to hear and determine whether any particular individual is an alien or a citizen, in so far at least as such determination depends upon conclusions which may be reached upon disputed questions of fact. United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917; United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040. See, also, In re Tang Tun (9th Circuit) 168 Fed. 488, 93 C. C. A. 644; Edsell v. Mark (9th Circuit) 179 Fed. 292, 103 C. C. A. 121; Haw Moy v. North (C. C. A. 9th Circuit) 183 Fed. 89; Hoo Choy v. North (C. C. A. 9th Circuit) 183 Fed. 92. The finding that the petitioner was not the wife of Otto Sprung was the decision of a question of fact, or, at most, of mixed law and fact. Even those cases which lean most strongly in the direction of maintaining judicial control over the actions of the executive officials in dealing with aliens do not hold that the courts can review the decisions made by such officials on any questions except those which turn upon matters of law exclusively. Davies v. Manolis (7th Circuit) 179 Fed. 823, 103 C. C. A. 310.

It has been suggested that some of the cases above cited arose under the Chinese exclusion acts, and that a different rule applies to questions arising under the general immigration statutes. The Japanese Immigrant Case, 189 U. S. 86, 97, 23 Sup. Ct. 611, 47 L. Ed. 721, was under the immigration, and not under the Chinese, acts. It is said that the decision of the Secretary of Commerce and Labor in a deportation case is not expressly made final as it is as to questions concerning the right of an alien to land. The courts have held otherwise. Looe Shee v. North (9th Circuit) 170 Fed. 566, 95 C. C. A. 646. In all that has been said it has been assumed that the alien or alleged alien has had a fair, although it may be a speedy and summary, hear-

ing. The law is well settled that, where such hearing has not been given by the executive officials, their action will be reviewed, and, if the facts justify, reversed. Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369. In this case there is no allegation that a fair hearing was not given the petitioner.

It follows that in obedience to the acts of Congress and the decisions of the courts we are constrained to hold that the court below had no jurisdiction to review the action of the immigrant inspector and the Secretary of Commerce and Labor. Its order discharging the petitioner must therefore be reversed, and the cause remanded, with direction to dismiss the writ of habeas corpus and to remand the petitioner to the custody of the immigrant inspector.

Reversed.

PRITCHARD, Circuit Judge (dissenting). After a careful consideration of the facts bearing upon the questions involved in this controversy and the law relating to the same, I am constrained to dissent from the opinion of the majority of the court in this instance.

The record, as appears from the statement of the learned judge who heard this case, is incomplete. The notes of oral testimony were not transcribed by the stenographer so as to be incorporated as a part of the record. Some of the documentary evidence was also returned to the parties by the court at the time of the trial, owing to the fact that the court was under the impression that no appeal would be taken. For some reason, the government has not seen fit to have the oral testimony as well as the documentary evidence to which I have referred incorporated as a part of the record. Owing to the state of the record, aside from the facts referred to in the judge's opinion, it is impossible to reach an intelligent conclusion as to what actually occurred in the court below, and under the rules of this court I think the appeal should have been dismissed. The majority of the court, being of the opinion that a question of jurisdiction is involved, think the case should not be dismissed.

I will therefore consider, first, the question as to whether the lower court had jurisdiction to grant a writ of habeas corpus in this instance. The petition filed in the court below contains the following allegations:

"That she is a citizen of the United States at present temporarily residing in the city of Norfolk and State of Virginia; that she was born in the Empire of Austria, and came into this country, landing at the port of New York, in the state of New York, about 15 years ago; that at the time of the said entry she was duly examined by the immigration inspector and legally admitted into this country: that for the said period of 15 years she has resided in this country, except for brief periods, when, for the purpose purely of making visits, she has returned abroad, coming back into this country within a period of a few months; that during her residence as aforesaid in this country she obtained a domicile therein: that about ten years ago she entered into marriage with Otto Sprung, then residing in New York, and continued to live with the said Otto Sprung as his wife from that time except for a brief period until the present; that the said Otto Sprung is a citizen of the United States, a copy of his naturalization papers being hereto attached, and asked to be read as a part hereof; that on the 9th day of May last past, your petitioner having been advised that there was some question as to the legality of her marriage with the said Otto Sprung, had a new ceremony performed by Rabbi Max Fried in the city of New York, pursuant to license duly issued."

"On the 24th day of May, 1909, your petitioner was arrested in the city of Norfolk, Va., in her home in said city, in which she was living with her said husband, by order of the Secretary of the Department of Commerce and Labor, by W. R. Morton, inspector in charge of the port of Norfolk, under sections 2 and 3 of the act of Congress of February 20th, 1907, known as the 'Immigration Act.' Your petitioner avers that she is now detained in the custody of the said W. R. Morton, inspector in charge of the port of Norfolk, under and pursuant to the alleged authority of the Department of Commerce and Labor, and is, in fact, incarcerated in the city jail of the city of Norfolk, and restrained of her liberty in violation of the law of the United States."

While these allegations are traversed by the return of the inspector in whose custody she was held, the return, among other things, contains the following allegation:

"That even if she had been married to the said Otto Sprung, as stated in said petition, which the undersigned denies, that would not affect her liability to deportation, as, being a prostitute and therefore not a person of good moral character, she would not be entitled to naturalization as a 'citizen of the United States under the act of Congress on that subject."

It should be observed that the foregoing statement clearly indicates that the inspector was of the opinion, notwithstanding the fact that it might be shown that the petitioner was the wife of an American citizen, that such showing on her part would not relieve her from liability to deportation. The inspector in his return goes still further, and insists that " * * * she would not be entitled to naturalization as a citizen of the United States under the act of Congress on that subject." It is insisted by a majority of the court that there are only two instances where the court below would have jurisdiction to grant a writ of habeas corpus: First, where the pleadings raise a question of law; second, where it is alleged that the petitioner cannot obtain a fair and impartial trial before the inspector. Considering the last proposition first, does any one for a moment imagine that the petitioner could have secured a fair and impartial trial before the inspector in view of the statement just quoted? The fact that the inspector in the face of the decisions of various courts, including the opinion of Justice Harlan, is so reckless as to state in his return that notwithstanding the fact she was married as alleged, still, according to his notions of the law, this unfortunate woman is a subject of deportation—this statement within itself is enough to give one an idea as to the kind of treatment the petitioner would obtain if called upon to appear before him. He seems to be of opinion that once a party is arraigned before him (as the petitioner in this instance) it necessarily follows that she should be deported, notwithstanding the fact that she may be able to show that she is an American citizen by virtue of her marriage. While there is no formal allegation in the petition to the effect that the petitioner could not secure a fair and impartial trial before the inspector, yet the statement of the inspector as to the law bearing upon the points in question afford ample reason why the court below should have assumed jurisdiction. While it would be more formal for the allegation to appear in the petition, yet if, from an inspection of the petition together with the return (and they are to be treated as one for the purpose of determining as to whether the court had jurisdiction), it clearly appears that the petitioner cannot secure

a fair and impartial trial, then undoubtedly the court below would have jurisdiction.

It is insisted that the question as to the marriage of the petitioner is one of law and fact, and that, therefore, the court below was without jurisdiction to pass upon the question as to whether the petitioner was an American citizen. Section 3 of the act of Congress passed February 20, 1907, entitled "An act to regulate the immigration of aliens into the United States," among other things, provides:

"* * * Any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections 20 and 21 of this act."

By the provision of this section the question as to whether "* * * an alien woman or girl shall be found an inmate of a house of prostitution or practicing prostitution at any time within three years after she shall have entered the United States," etc., is committed to the Secretary of Commerce and Labor for determination by sections 20 and 21 of said act. It was only intended by this provision to empower the Secretary of Commerce and Labor, through the inspectors of that Department, to go to the extent of inquiring as to whether she is an alien, and as to whether, being an alien, she has committed the acts enumerated therein. To this extent the jurisdiction of the inspector is exclusive, but evidently it was never intended by Congress to confer jurisdiction upon such inspector to arrest and deport an American citizen, even though she may be an inmate of a house of prostitution or practicing prostitution. When it is alleged, as it is in this instance, that the petitioner is a citizen of this country by virtue of her marriage to an American citizen, such allegation raises an issue as to a jurisdictional fact, and thereby challenges the right of the inspector to proceed with the hearing, and this question of jurisdiction from the very nature of things should be determined by a judicial tribunal inasmuch as its determination involves a legal question.

In the case of Gonzales v. Williams, 192 U. S. 7, 24 Sup. Ct. 171, 48 L. Ed. 317, Chief Justice Fuller, in delivering the opinion of the court, said:

"If she was not an alien immigrant within the intent and meaning of the act of Congress, * * * the commissioner had no power to detain or deport her, and the final order of the circuit court must be reversed."

The Chief Justice, in speaking for the court, also said:

"We think it clear that the act relates to foreigners as respects this country, to persons owing allegiance to a foreign government, and citizens or subjects thereof, and that citizens of Porto Rico whose permanent allegiance is due to the United States, who live in the peace of the dominion of the United States, the organic law of whose domicil was enacted by the United States, and is enforced through officials sworn to support the Constitution of the United States, are not 'aliens.'"

In the case of In re Lea (D. C.) 126 Fed. 234, the question as to whether the petitioner came within the provisions of the act of March 3, 1903—that is, whether she had entered the country prior to that

date—was involved. Bellinger, District Judge, drew this distinction in a case of deportation:

"The question as to whether she belongs to a class whose presence in the country is unlawful has been committed to the political department of the government; and, if her right depended solely on that question, I should decline to consider her case further, since, notwithstanding the illegal proceedings under which she is held, she would still be liable to deportation. But, assuming that she belongs to a class of aliens not permitted by the act of 1903 to remain in the country, the question as to whether she was residing in the country at the time the law was passed is, in my opinion, like the question of alienage, one that involves the jurisdiction of the officers authorized by that law to deport aliens. If the petitioner is not within the operation of the law, she is not answerable to the authority conferred by it upon the administrative department of the government. Her rights in such a case are like those of a citizen. It will not be contended that a person claiming to be a citizen is concluded by the decision of the immigration officers that she is an alien."

The case of Davies v. Manolis, 179 Fed. 818, 103 C. C. A. 310, decided by the Circuit Court of Appeals for the seventh Circuit, is relied upon to sustain the contention that the courts cannot review the decisions made by such officials on any questions except those which turn upon matters of law exclusively. Seaman, Circuit Judge, after stating the facts relating to the conduct of the petitioner, etc., said:

"Nevertheless, final determination of the statute applicable to the case and interpretation (to say the least) of the grant of power therein cannot rest with the executive officer under any authority cited; nor can such finality of executive decision have sanction under our system of government. Whatever may be the powers, even of judicial nature, vested in such offices for needful and summary enforcement of the governmental policy, we believe ultimate decision of the fundamental questions above stated must remain with the courts."

This view of the law is sustained in a recent opinion of the Circuit Court of Appeals for the Second Circuit in the cases of Thakla Nicola et al., 184 Fed. 322. There it was held that the court below had jurisdiction, and in those cases proof was offered in the lower court for the purpose of establishing the fact that the petitioners were American citizens. The court, in referring to the fact that the relators were American citizens by virtue of having married citizens of this country, said:

"This is abundantly established by the proof and we understand that it is not disputed by the district attorney."

It is significant that the court was of the opinion that the fact that they were American citizens had been abundantly established by the proof. It is true that the court also said, "and we understand that it is not disputed by the district attorney," giving that as an additional reason why there could be no doubt that the petitioners were American citizens. It cannot be inferred that the court deemed it necessary that there should have been an admission on the part of the district attorney to the effect that the petitioners were American citizens in order to give the court below jurisdiction. In this land of liberty, where a citizen is entitled to the protection of the law, one having become an American citizen, as this petitioner alleges, cannot be arbitrarily deported from this country without being afforded an opportunity to

have her rights passed upon by the courts. Unless such be the law, then in a proceeding of this character it would be an easy matter to secure the deportation of any native born American citizen provided witnesses could be found who, for motives of revenge or otherwise, would be willing to give false testimony upon which the inspector could deport such person in pursuance of the section under which it is sought to deport the petitioner.

The court, among others, relies upon the case of United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917, to sustain the contention that Congress has by the immigration statutes conferred upon executive officials final and exclusive jurisdiction to hear and determine whether any particular individual is an alien or a citizen, in so far at least as such determination depends upon conclusions which may be reached upon disputed questions of fact. A careful examination of that case shows that the court excludes the decision of the question as to the finality of the decision of the executive officers in respect to the citizenship of the petitioner. The facts show that no such question had or could have arisen. No evidence to show citizenship was introduced, and the decision is further based upon the fact that they had not pursued the course prescribed by the act of Congress. The case of the United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, is also quoted in support of this contention. A careful examination will show that the only fact in issue there was as to whether the petitioner was born in the United States. The extent of the decision is confined to the scope of the questions presented, and cannot be regarded as authority to any further extent. It will be found upon examination that the court was dealing with the right of a person of Chinese descent to enter this country. So far as I have been able to find, there is no case wherein it is held that an inspector, as in this instance, has jurisdiction to determine as to whether an American citizen is subject to deportation.

I am of opinion that the court below had jurisdiction to determine the question as to whether the petitioner by virtue of her marriage became an American citizen, and I will now discuss this phase of the question.

While, as I have stated, the allegation contained in the petition to the effect that the petitioner is the lawful wife of an American citizen was traversed by the return of the inspector, yet the government offered no evidence in support of this contention. On the other hand, it affirmatively appears that the petitioner was married to her husband in Baltimore, and later, being advised of some lack of formality in her marriage, was again married by a Jewish rabbi in the city of New York by virtue of a license issued by the proper authorities of the city of Baltimore. It appears from a certified copy of the marriage records of the clerk of the court of common pleas of Baltimore, Md., that a marriage license was issued on the 18th day of May, 1898, to the petitioner and her husband. There is also attached the signature of the rabbi who married them to the effect that they were united in marriage on the 9th day of May, 1909, in the city of New York in pursuance of the license issued by the clerk of the court of common pleas

for Baltimore. This, I think, is sufficient to establish the fact that the petitioner is the lawful wife of Otto Sprung, who is admitted to be an American citizen. At any rate, this marriage would be good at common law. While I appreciate the fact that we cannot treat the statements contained in the opinion of the court below as findings of fact, yet, under the peculiar circumstances of this case, that is the only source from which we can get any information as to the reasons which prompted the court to discharge the petitioner. The court, in its opinion, in referring to the facts, said:

"In the Sprung Case, the facts and testimony as viewed by the court in this case sustain the contentions made by the petitioner, namely: That she is the wife of an American citizen, and hence herself a citizen, and not a deportable subject. She came to this country as a single woman some 15 years ago, being of Austrian birth. She did not belong to any inhibited class, and her entrance was lawful. That for a long time thereafter she was in business in the city of New York as a milliner, during which time she met her husband, who was a countryman of hers. That she left there and came to Baltimore, and married her husband, the marriage license having been secured from the court in Baltimore, which they both understood legalized the wedding. Shortly thereafter they went to Europe, and visited the home of the petitioner's parents in Austria, and stayed four months, and returned to this country. That they had a disagreement after returning and she separated from her husband, and for quite a while led an immoral life, as she had previously done after leaving New York, but without the knowledge of her husband. That something over a year ago she and her husband made up their quarrel, and renewed their relations as husband and wife, which continued up to the time of her arrest. That in August, 1908, she and her husband again visited her parents, she having returned to her native country for that purpose and to consult a specialist at Vienna. That they remained abroad some nine months. That she had a delicate operation performed, and she returned to this country in May, 1909, with her husband, bringing a letter from the specialist at Vienna to her physician at Norfolk. That upon this trip abroad she and her husband regularly secured passports from this country, and left and returned to this country as man and wife. That while abroad on this last trip for the first time they were advised of some lack of formality in their marriage, and in May of the present year, immediately after their return to this country, a Jewish rabbi in New York, as shown by his certificate admitted in evidence, married them in pursuance of the license issued in Baltimore. That at the time of her arrest she was temporarily a resident of Norfolk, Va., with a view of consulting her physician, lawfully living with her husband, who was supporting, caring for, and defending her, and he was present in court, in person, and by counsel, demanding her release, and that she had properly conducted herself since last joining her husband, and had not been guilty of any immoral practices."

Does the fact that the petitioner was married to an American citizen invest her with the rights of a citizen of this country? Section 1994 of the Revised Statutes (U. S. Comp. St. 1901, p. 1268) is in the following language:

"Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen."

In the case of the United States v. Kellar (C. C.) 13 Fed. 82, Justice Harlan, on the circuit, held that upon the marriage of a resident alien woman with a naturalized citizen, she, as well as her infant son, dwelling in this country, became citizens of the United States as fully as if they had become such in the special mode prescribed by the natu-

ralization laws. Also in the case of Leonard v. Grant (C. C.) 5 Fed. 11, Judge Deady, of the Southern District of New York, passed upon this question. In that case it was held that an alien woman entitled to be naturalized, who is married to a citizen of the United States, becomes by that act a citizen of this country, and that such admission to citizenship has the same force and effect as if such woman had been naturalized by the judgment of a competent court. In that case it was held that the language of the act, "might herself be lawfully naturalized," does not require that the woman shall have the qualifications of residence, character, etc., as in the case of admission to citizenship in a judicial proceeding, but it is sufficient if she is of the class or race of persons who may be naturalized under existing laws.

This question was also passed upon by the Attorney General of the United States in response to a letter from the Secretary of Commerce and Labor. In referring to the facts the Attorney General said:

"The person concerned is a young woman 28 years of age, and a native of Belgium. She entered the United States at the port of New York May 5, 1907, and was at that time unmarried. After landing in this country she proceeded at once to Crawford, Neb., where she has since resided. On February 4, 1909, together with the keepers of a house of prostitution, she was taken before a United States commissioner by way of initiating criminal proceedings under section 3 of the immigration act (34 Stat. 898). All the parties were released by the commissioner under bond. On February 23, 1909, pursuant to an application made by a local inspector of the immigration service, this department issued a warrant for the arrest of the young woman, with a view to her deportation as being an alien found in the United States in violation of law; i. e., an alien prostitute, and one who had entered the country for that purpose and who had been found an inmate of a house of prostitution and practicing the same within three years after landing. The woman in question was duly taken in custody under this warrant on March 5, 1909. The proceedings before the United States commissioner, so far as she was concerned, were dismissed; and she was given a hearing before the immigrant inspector touching her right to be and remain in the United States. From the testimony taken at this hearing it appears that she came to the United States under an assumed name, accompanied by another woman, who was the mistress of the house of ill fame in which she was found in Crawford, Neb.; that she was taken directly to that city and at once entered the service of her companion as a domestic; that some months later she began to live the life of a prostitute and became one of the regular inmates of the establishment, so continuing until the end of January, 1909, when she was taken sick. It further appears that after her release by the United States commissioner, and before her arrest under a warrant of this department, namely, on February 12, 1909, she was lawfully married at Harrison, Neb., to a native born citizen of the United States, a private in Troop K, Eighth Cavalry, United States Army, stationed at Ft. Robinson, Neb. The professed intention of the woman at the time of her marriage was, to abandon her previous mode of life and to remove with her husband to his home in Pennsylvania upon his discharge from the army on July 1, 1909. The husband is aware of the cause of his wife's arrest, but nevertheless professes to believe in her good intentions, and has appealed to the President for the protection of her rights and his own."

The syllabus of that case reads as follows:

"An alien prostitute who entered the United States and was found an inmate of a house of ill fame and practicing prostitution within three years after landing, having been since lawfully married to a native born citizen of the United States, is to be deemed a citizen, and cannot be deported under the

immigration laws for her conduct previous to her marriage. The words 'who might herself be lawfully naturalized,' in the act of February 10, 1855 [c. 71] 10 Stat. 604, and section 1994, Revised Statutes, refer to the class or race who might be lawfully naturalized, and compliance with the other conditions of the naturalization laws is not required. The immigration laws have not added to the classes of persons incapable in their own right of naturalization."

It appears from the statement of the learned judge who heard this case below that the petitioner was living with her husband and conducting herself properly in all respects; that she was in wretched health and was at the time of the hearing suffering with nervous prostration, and that her physical condition was such that imprisonment would in all probability have resulted in her death; that her husband sat by her side at the trial showing by his demeanor that he had the utmost confidence in his wife, and that he recognized fully the duties incumbent upon him as her husband and was willing to care and provide for her. It was also shown that he accompanied her to Austria in order that she might have a very delicate operation performed, at which time the department granted to both the petitioner and her husband regular passports as American citizens upon which they went to their former home and returned to this country. It is but fair to assume that these parties at that time satisfied the Secretary of State that they were entitled to passports.

In the case recently decided by the Circuit Court of Appeals for the Second Circuit—to which I have referred—the court also said:

"The fact, if it be so, that these relators are undesirable citizens, is not germane to the present controversy. As pointed out by Judge Hand (United States v. Williams [D. C.] 173 Fed. 626), a woman does not lose her citizenship because her health is bad or her moral character open to criticism. These relators are not citizens of the countries from which they came, as those countries by the mere act of marriage with an American citizen terminate their allegiance. They are American citizens or they are without a country. That they are citizens is affirmed, we think, by the great weight of authority, several of the leading cases being cited in the opinion of the district judge. Being citizens they cannot be excluded as aliens."

The devotion of the husband to the petitioner in the trying ordeal which she has been compelled to undergo is ample proof of the fact that he is a worthy citizen of this country. As to his citizenship there is no controversy, and it should be borne in mind that when he became an American citizen he acquired, among other things, the right to marry and enjoy the society of his wife. But by the return of the inspector we are informed by that official that he is to be denied this right, notwithstanding the fact that a number of courts have held that, when she became his wife, she thereby became an American citizen.

If I am in error as respects this question, then it is time that our laws be amended so as to prevent the wholesale deportation of those who are entitled to the protection of the Constitution and laws of this country. I am loath to believe that Congress ever intended that one situated as the petitioner should be separated from her husband and sent beyond our borders to be cast adrift in the world without the aid and protection of the one who has undertaken to afford her the comforts to which she is entitled by virtue of her marriage.

For the reasons stated, I cannot concur in the views expressed by the majority of the court, being of opinion that this appeal should be dismissed, and, if not dismissed, that the judgment of the lower court should be affirmed.