## *In re* FEINKNOPF.[1]

*(District Court, E. D. New York.* September 18, 1891.)

IMMIGRATION—ACT OF MARCH 3, 1891—SPECIAL INQUIRY—EVIDENCE—DETERMINATION BY INSPECTOR.

In order to lawfully debar and return an alien immigrant by virtue of the act of March 3, 1891, on the ground of his being a person likely to become a public charge, there must be a determination by the inspection officer that the immigrant is likely to become a public charge, such determination being made upon competent evidence tending to show such to be the fact; hence, where the record showed a determination that an immigrant was likely to become a public charge, made by the inspector without any evidence to prove the fact, and contrary to evidence adduced by the immigrant, which evidence was disbelieved by the inspector, *held*, that there had been no such determination as the statute contemplates, and no valid order for the return of the immigrant can be made.

At Law. On return to writ of *habeas corpus.*

*A. H. Sarasohn,* for petitioner.

*Jesse Johnson,* U. S. Dist. Atty.

BENEDICT, J. This case comes before the court upon the return made by James O'Beirne, as acting commissioner of immigration and inspector of immigration, to a writ of *habeas corpus* issued upon the petition of Adolph Feinknopf, an alien immigrant, who has arrived by water at the port of New York, and has been ordered by the said inspector of immigration to be returned to the port whence he came. The return shows that the petitioner, upon arrival, was inspected by the inspector, and, a special inquiry having been demanded by the petitioner, such special inquiry was had by the said inspector; and thereupon it was determined and decided by the said inspector that the petitioner was a person likely to become a public charge, and therefore the inspector directed that the petitioner be detained, and sent back to the place whence he came. In connection with the return is the testimony taken upon the special inquiry held by the inspection officer. This evidence, which is set forth at length in the return, consists of the testimony of several sworn witnesses produced by the petitioner, whose testimony, if believed, shows that the petitioner is 40 years old; that he is a native of Austria; that he is a cabinet-maker by trade, and has exercised that trade for 25 years; that he has no family; that he has baggage with him, worth $20, and 50 cents in cash; that he is a man who can find employment in his trade, and is willing to exercise the same. The affidavit of the immigrant before the inspection officer on the preliminary inquiry stated the same facts, and, in addition, that the immigrant has not been an inmate of an almshouse, and has not received public aid or support, and has not been convicted of crime. No testimony was offered upon the special inquiry to contradict this testimony, and upon the argument here it was conceded on behalf of the inspector that there was not before him testimony from any witness tending to contradict the testimony produced by the immigrant. Of course this testimony,

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

if believed, would not warrant the conclusion that the petitioner was a person likely to become a public charge; but it is said that the testimony produced by the immigrant was disbelieved by the inspector. Assuming such to be the fact, and conceding the power of the inspection officer to disbelieve testimony presented to him, the case is still devoid of any evidence whatever of any fact upon which to base a determination that the petitioner is likely to become a public charge. The question to be decided, therefore, is whether an order for the return of an alien immigrant as a person likely to become a public charge, made by an inspection officer, without any evidence whatever tending to show such to be the fact, is a valid order, made in compliance with law, or invalid, because not made in compliance with law. The position taken by the district attorney on behalf of the inspector is that by the act of March 3, 1891, the determination of the inspection officer, although made without evidence, if made upon an inspection of the immigrant by the inspection officer, is such a determination as is contemplated by the statute, is conclusive upon the courts, and is valid authority for the detention and return of the immigrant. In behalf of the petitioner it is conceded that the determination of an inspection officer when made upon facts submitted to his judgment cannot be disturbed in a proceeding like this; but it is insisted that an order for the return of an alien immigrant as a person likely to become a public charge is not in conformity with the statute, and illegal, when, as in this case, the inspection officer has made no determination upon any facts submitted to him, but, on the contrary, in the exercise of arbitrary power, without any facts calling for the exercise of judgment, and upon mere inspection of the immigrant, determined the immigrant to be a person liable to become a public charge.

I am unable to assent to the position taken by the district attorney, that the act of 1891 confers upon the inspection officer power to detain and send back an alien immigrant as being a person liable to become a public charge, in the absence of any evidence whatever tending to establish that fact. Assuming that the power to send back to the country whence they came aliens who have been permitted to come within the boundaries of the United States is one of the governmental powers of the United States; and assuming also that, if the United States government has that power, it rests with the congress of the United States to say when and how it shall be exercised; and assuming, but not deciding, that, notwithstanding the provision of the constitution of the United States forbidding the suspension of the writ of *habeas corpus*, it is a valid exercise of that power by congress to make conclusive upon the courts the determination of an inspection officer, made in the exercise of arbitrary power, and without evidence of any fact, that the immigrant is a person likely to become a public charge, and therefore to direct the detention and return of the immigrant,—still the question remains, is the statute of 1891 such a statute? Was it the intention of congress by the act of 1891 to confer upon the inspection officer appointed by that act power upon his mere inspection of the immigrant

to make a determination that the immigrant is a person liable to become a public charge, and thereupon to direct his detention and return to the country whence he came, without having before him as the foundation of his judgment some competent evidence upon which to base such a determination? The possession of such a power by any civil officer is so contrary to the spirit of our laws that, before the deposit of such a power with the inspection officers "or their assistants," appointed in pursuance of the act of March 3, 1891, will be held to be intended by the act, plain and positive language to that effect in the statute itself may well be required. The act contains no such language. It provides for the appointment of inspection officers, and it confers upon such officers the powers conferred by the act of 1882 upon state commissioners, boards, or officers acting under contract with the secretary of the treasury; but neither in the act of 1891 nor in the act of 1882 is there any express language conferring such a power as has been exercised by the inspection officer in the case under consideration. But it is said the act of 1891 makes it the duty of the inspection officer to inspect the immigrant, and this, by implication, confers upon the inspection officer power to direct the detention and return of the immigrant when, upon such inspection alone, without evidence, he determines that the immigrant is a person likely to become a public charge. If it had been the intention of the statute that a determination by the inspection officer, made upon inspection alone, should be legal ground for the detention and return of the immigrant, it would have been so easy to say so that the absence of any language indicating such intention goes far to show the non-existence of such an intention. By the act of 1882 power to inspect was also conferred, but that act was never, to my knowledge, held to authorize a determination upon inspection without competent evidence. The decisions were to the contrary. In *Re Day*, 27 Fed. Rep. 678, Judge BROWN held that the petition and return showed the commissioners were acting within their jurisdiction, because there was competent evidence before the commissioners for making such a decision; and he declared that the rule laid down by Mr. Justice BLATCHFORD, in *Re Stupp*, 12 Blatchf. 501–519, must govern such a case. The language of Justice BLATCHFORD, referred to, is as follows:

"The court issuing the writ must inquire and adjudge whether the commissioner acquired jurisdiction of the matter by conforming to the requirements of the treaty and the statute, whether he exceeded his jurisdiction, and whether he had any legal or competent evidence of facts before him on which to exercise a judgment as to the criminality of the accused. But such court is not to inquire whether the legal evidence of facts before the commissioner was sufficient or insufficient to warrant his conclusion. * * * The proper inquiry is to be limited to ascertaining whether the commissioner had jurisdiction, and did not exceed his jurisdiction, and had before him legal and competent evidence of facts whereon to pass judgment as to the fact of the criminality, and did not arbitrarily commit the accused for surrender without any legal evidence."

These decisions are equally applicable to a case arising under the statute of 1891. But it is said the act of 1882 contained no provision like

v.47 F.no.6—29

the provision in the act of 1891, that "the decision made by the inspection officers or their assistants touching the right of any alien to land, when adverse to such right, shall be final." I am unable to see that this provision throws any light upon the question under consideration. The decision made final by the act of 1891 is a decision such as is contemplated by the act, namely, a decision made upon a consideration of competent evidence, and not an arbitrary decision, made without any evidence whatever. Indeed, it seems unreasonable to impute to the law-making power an intention to authorize a determination that a person is likely to become a public charge to be made upon inspection only, for the question whether a person is likely to become a public charge is a question not capable of determination by inspection. A person may present every appearance of poverty, and yet be possessed of abundant means. He may be maimed or blind, and still be abundantly capable of maintaining himself without becoming a public charge. The presumption against an intention on the part of congress to permit such a determination of such a fact to be made upon inspection only is therefore strong. It has been argued that, inasmuch as the statute puts the burden of proof upon the immigrant in a case of special inquiry, it follows that when the testimony produced by the immigrant upon such special inquiry is not believed by the inspector it was intended to permit the immigrant to be returned upon inspection alone. Such a conclusion is by no means necessary. The more reasonable conclusion seems to be that the statute, when providing that the immigrant shall be returned unless upon special inquiry he shows satisfactorily that he does not belong to one of the excluded classes, assumes that there was before the inspector, at least upon the preliminary inquiry, testimony adverse to the contention of the immigrant, affording foundation for the judgment that the immigrant was a person likely to become a public charge. The statute contemplates a determination adverse to the immigrant made by the inspection officer upon evidence, and that a determination so made shall be sufficient to authorize the detention and return of the immigrant when no credible testimony to the contrary is produced by the immigrant upon the special inquiry. Furthermore, the intention that the order for the return of an immigrant shall be based upon a determination of an inspection officer, made upon testimony taken under oath, is shown by the provisions of the act itself. I refer to the provision where power is conferred upon inspection officers "to take and consider testimony touching the right of any such alien to enter the United States;" where, in order to enable the inspector to take and consider testimony, power to administer oaths is also conferred; and where it is declared that all testimony so taken and considered shall be entered of record; and where provision is made for appeal to the superintendent of immigration and to the secretary of the treasury. An inspection cannot be entered of record. These provisions look to a determination upon evidence that can be entered of record, and not to a determination made without evidence upon inspection merely; and they would be unnecessary if the intention of the law-making power had been to confer upon

the inspection officer the arbitrary power to disregard all testimony produced by the immigrant, and to determine the immigrant to be a person likely to become a public charge upon his inspection alone. The provision for appeals points to the same conclusion. This is intended to provide a way of reviewing the decision of the inspection officer by the superintendent of immigration and by the secretary of the treasury. But the inspection made by the inspection officer cannot be brought before the appellate tribunal, and it cannot be supposed that it was intended that the secretary of the treasury should, upon an appeal to him, make a personal inspection of the immigrant himself. It would follow, therefore, that in a case like the present an affirmance of the determination of the inspection officer would be a determination adverse to the immigrant, without any basis whatever, not even an inspection. I therefore conclude that, in order to a lawful detention and return of an alien immigrant as being a person likely to become a public charge by virtue of the act of 1891, there must be a determination by the inspection officer of the fact that the immigrant is likely to become a public charge, made upon competent evidence tending to show such to be the fact; and that, as the inspector, in making a determination in this case upon inspection only, and without competent evidence, exceeded his authority, his order, not having been made in compliance with the statute, affords no legal ground for the detention of the relator. To prevent misunderstanding, I repeat, it is not intended to say that the determination by the inspection officer, when made upon competent evidence, can be reviewed by the court, but simply this: That when the record shows a determination that the immigrant is likely to become a public charge, made without a particle of evidence tending to prove the fact, there has been no such determination as the statute contemplates, and, in the absence of such a determination, no valid order for the return of the petitioner can be made.

It has been further contended that the application for the petitioner's discharge is premature, that the statute provides for appeals to the superintendent of immigration, and from him to the secretary of the treasury; and that the decision upon such appeals should be made before the court will entertain a petition for *habeas corpus*. But in a case like this, where there has been no determination capable of being reviewed, because not made upon any evidence whatever, in view of the law as above stated, the result of the appeals, if taken, would necessarily be the discharge of the petitioner, and no reason is seen for compelling the petitioner to remain in custody pending appeals that cannot accomplish such a review as the statute contemplates, for the reason that no such determination as the statute contemplates has been had. Such being my opinion as to the construction to be put upon the act of 1891, the right, as well as the duty, to discharge the petitioner follows. The privilege of the writ of *habeas corpus* is preserved by the constitution of the United States, save in the case of rebellion and insurrection; and courts established under the constitution cannot, therefore, either directly or indirectly, be deprived of the power by means of the writ of *habeas corpus*

to bring before them, and in a proper case to set at liberty, persons held in confinement contrary to law. The detention of the petitioner is contrary to law, because it is not every alien immigrant arriving by water that can be returned by an inspection officer, but only an alien immigrant determined in the method prescribed by the statute to belong to one of the excluded classes. And when, as in this case, it is shown to the court upon the return to a writ of *habeas corpus* that the order for the return of the immigrant was made without such a determination as the law requires, the conclusion necessarily follows that the officer in making the order exceeded his jurisdiction, and in such case the duty is cast upon the court to grant the discharge prayed for. The importance of the question in this case will, I trust, induce the district attorney to take an appeal from this decision; and, to enable him to do so with effect, entry of the order for discharge will upon his request be delayed a reasonable time.