### LEWIS v. FRICK, Immigration Inspector.

(Circuit Court, E. D. Michigan, S. D. April 20, 1911.)

1. ALIENS (§ 54*)—DEPORTATION—DETERMINATION BY DEPARTMENT—CONCLUSIVENESS.

A determination by the Department of Commerce and Labor of a question of fact involved in a deportation proceeding is not reviewable by the courts, if sustained by some evidence, but errors of law may be reviewed.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. ALIENS (§ 53\*)—ENTRY—FACTS NOT CONSTITUTING.**

Where an alien has had an established residence and occupation in the United States for six years, and he crosses the border into a foreign country not his native country for a mere temporary purpose, and returns within an hour, especially at a point like the Detroit-Windsor crossing, the return cannot be deemed an entry within the immigration laws.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.\*]

**3. ALIENS (§ 53\*)—DEPORTATION—GROUNDS.**

That an alien was convicted of or pleaded guilty to disorderly conduct on withdrawal of a charge of housebreaking does not show conviction or admission of a crime or misdemeanor involving moral turpitude warranting deportation.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.\*]

**4. ALIENS (§ 53\*)—DEPORTATION—GROUNDS.**

An alien cannot be deported for unlawful entry, where the only complaint relates to an offense committed long after his entry.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.\*]

**5. ALIENS (§ 53\*)—DEPORTATION—GROUNDS.**

An alien cannot be deported as having procured his admission by false and misleading statements, where any such statements were made on his return, and not on his entry into the country, and related not to himself, but to a woman accompanying him.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.\*]

**6. ALIENS (§ 53\*)—DEPORTATION—GROUNDS.**

Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 448), excludes from admission an alien who attempts to bring in a woman for immoral purposes. Section 3 makes it a felony for an alien to import an alien woman for such purposes, and authorizes deportation on conviction. *Held*, that an alien may be deported on account of importing a woman for immoral purposes only on conviction of that offense.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.\*]

Petition by Samuel Lewis for a writ of habeas corpus against G. Oliver Frick, Immigration Inspector. Petitioner discharged.

Watson, U. S. Atty., and Bland, Asst. U. S. Atty., for Inspector in Charge.

Florian, Moore & Wilson, for petitioner.

DENISON, District Judge. The petitioner, Samuel Lewis, came from Russia, to this country, entering at the port of New York, and regularly passing inspection, on September 20, 1904. He lived in, or in the vicinity of, New York, until March, 1910, when he came to Detroit, where he has since made his home, and worked as a painter and paper hanger, and it is undisputed that he was industrious and orderly and in no trouble until November 17, 1910. On that day, he went across the river, from Detroit to Windsor, remained not more than an hour or so, and brought back with him, into the United States, a woman claimed to be his wife. On this occasion, he made to the immigration officers a statement as to the woman and her recent history, some part of which statement was concededly untrue. In December following he was indicted by the grand jury for violation of section 3 of the immigration law (Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1909, p. 447]) as amended March 26, 1910

(Act March 26, 1910, c. 128, 36 Stat. 263), the sole charge being that, in bringing this woman across the river on November 17th, she was, by him, imported for an immoral purpose. This indictment duly came on to be tried in the District Court of this district, and on March 23, 1911, the trial jury rendered a verdict of not guilty. The issue was whether the woman was in fact, or was believed to be, his lawful wife. On November 24, 1910, he was arrested by an immigrant inspector upon a warrant of arrest issued by the Department of Commerce and Labor, and specifying, as its moving causes: (1) That he had been convicted of or admitted having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entering the United States; (2) that he had brought into the United States a woman for immoral purposes; (3) that at the time of his entry (November 17, 1910), he was likely to become a public charge; and (4) that he entered without inspection, and hence was unlawfully in the country. Certain hearings and examinations were held before the inspectors. Complaint is made concerning some features of these examinations, and it is said that he did not have a fair hearing or such hearing as the law requires. So far as concerns the main question of fact into which the department undertook to examine, viz., the importing of the woman, I do not see sufficient ground for these complaints, and if the department had jurisdiction, under the existing circumstances, to hear and determine this question of fact and to deport upon that ground, I should not undertake to review its conclusion. What I understand to be a complete file copy of the department proceedings does not show any formal finding by the department upon the charges made, but that is, probably, not material, because on February 14, 1911, the Secretary of Commerce and Labor issued his warrant of deportation, reciting that, after due hearing, he had become satisfied that Lewis, who landed at Detroit, Michigan, from Canada, November 17, 1910, was in this country in violation of the immigration law as amended March 26, 1910, in this, to wit:

"That the said alien was a member of the excluded classes in that he has been convicted of and admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entry into the United States; that he procured, imported, and brought into the United States a woman for an immoral purpose; that at the time of his entry into the United States he was a person likely to become a public charge; and that he is unlawfully within the United States, in that he secured admission by false and misleading statements thereby entering without the inspection contemplated by law, and may be deported in accordance therewith."

Thereupon, the warrant directed that he be taken to New York and be from there deported to Russia. February 28th, the department directed that his deportation be stayed until he was released by the court authorities in connection with the pending indictment. March 23d, Mr. Frick was authorized to stay deportation for 10 days further to enable Lewis to submit additional information. Lewis, by his attorneys, submitted to the department, at Washington, a showing that he had been acquitted on the indictment, and also some character evidence, April 13th, and, it is to be assumed after this additional showing, the Secretary withdrew the stay and directed Mr. Frick to ex-

ecute the warrant immediately. Thereupon, a writ of habeas corpus was allowed from this court. Mr. Frick, appearing in person and by the United States district attorney, makes return. The foregoing facts and others to be hereafter mentioned, appear without dispute either from the petition and return or from the statements made by Mr. Frick and the District Attorney in open court upon the hearing. The immigration inspector insists that this court is without jurisdicton to make the inquiry which will be necessary in order to release the petitioner from custody, while the petitioner insists that the department was without jurisdiction to issue the warrant.

[1] It is entirely clear that when the petitioner, in such case, is an alien, and when the right to deport him depends upon a question of fact and when there has been a hearing by the department of that question, such hearing being upon disputed evidence, and the conclusion of the Secretary is based upon some evidence, such conclusion cannot be reviewed by the courts, and if the fact so found does, in law, justify the deportation, it must proceed, however mistaken the conclusion of the department may seem to the court to have been. On the other hand, it is equally clear that errors of law, by the department, may be reviewed by the courts; that an erroneous conclusion of law, made by the department, cannot be sustained by being mistakenly called a conclusion of fact; that a conclusion of fact based upon no evidence tending to support it is of no force; that the hearing at which no evidence is introduced is no hearing; and that the secretary's authority for deportation must be found in the statute. See cases cited in note 1.

[2] Except as to the charge as to the woman, all the charges depend upon the theory that Lewis' entry into the United States was on November 17, 1910. I think this is a wholly mistaken theory, on the undisputed facts. There has been a great diversity of holding under varying circumstances as to the effect of a temporary return to his native country by an alien who had established a domicile in this country. Sometimes it is quite clear that the return therefrom to this country must be considered a new entry, and sometimes whether a new entry might be a question of fact; but I find no case supporting the theory that where an alien has an established residence and occupation in this country which has extended, as in this case, for six years, and where he crosses the border, not into his native country but into another foreign country and so crosses for a mere temporary purpose, and returns within an hour—particularly at a point like the Detroit-Windsor crossing where hundreds are crossing and recrossing every day—I find no support for the theory that the return in such case can be considered as the entry to which the immigration laws relate. See cases cited in note 2.

[3] It is conceded that the charge relating to having been convicted of or admitting a felony or other crime or misdemeanor has no basis whatever, excepting that two or three years before coming to Detroit and after he had been two or three years in this country, Lewis was arrested by the New York police on the charge of housebreaking, that this charge was withdrawn, and a charge of disorderly conduct placed against him, and that to this he pleaded guilty (or perhaps was con-

victed) and paid a fine of $10. It is further said that at about the same time and in Atlantic City Lewis was convicted as a disorderly person and paid a small fine. It does not appear, however, that this Atlantic City charge was ever brought to Lewis' attention in the department proceedings. As to the New York City charge, Lewis insisted from the beginning that he was guilty of nothing, and did not know what he was arrested for, and paid a fine because he was ordered to. In this matter, the department may suspect that Lewis was guilty of housebreaking or that he was consorting with thieves and burglars, but he has neither admitted nor been convicted of any such thing. Certainly, there is no basis for the idea that disorderly conduct, fined $10, is a "crime or misdemeanor involving moral turpitude," any more than is the case of carrying concealed weapons, considered by Circuit Judge Ward in Ex parte Saraceno (C. C.) 182 Fed. 955.

[4] Jurisdiction to deport cannot rest on this charge; and this without regard to the date of the offense which was long after Lewis' actual entry into the United States. The latter consideration alone would end the question.

As to the accusation that at the time of his entry he was likely to become a public charge, it is to be noted, first, that this has to do with his actual entry in 1904, as to which no claim is made and no proof taken; second, that at the time of the Windsor-Detroit crossing, he was able bodied, industrious and self-supporting, and nobody has suggested the contrary; and, third, that the proposition advanced by the department as the only one upon which this claim was ever thought to rest is that inasmuch as he was bringing in a woman contrary to law, he was likely to be arrested and convicted and imprisoned and so become a public charge. It therefore appears that this element of his offense is collateral to the other or importing charge and must stand or fall therewith even if it could otherwise have force.

[5] The final ground recited is that he procured admission by false and misleading statements. It is conceded by the inspector that this relates wholly to the Windsor-Detroit admission of November, 1910, and on this subject, it is to be observed, first, that this was not the time of his admission to the country; second, that his alleged false and misleading statements related wholly to the woman and had nothing to do with himself or his right to admission; and, third, that if their falsity had been discovered when made, he would, nevertheless, have had a perfect right to return to his domicile in Detroit. This ground of deportation, obviously, cannot stand on its own merits, and is collateral to the charge of importation.

This leaves for consideration only the last named charge, viz., that relating to the woman. The jury found Lewis not guilty. From my familiarity with the evidence, I can say I think the evidence as fully developed on the trial (it being, in a substantial way, the same as the evidence before the department) justified a strong suspicion that Lewis was guilty, but did not justify a conviction under the rules of criminal law. The case is one where the courts could not review the conclusion of the department, if the department has jurisdiction to hear such question at all.

[6] However, I am unable to find in the immigration law any authority whatever for deporting an alien because he has imported a woman for immoral purposes. Such importation might be fully proved, or, indeed, might be admitted by the alien, and still the department would have no jurisdiction to deport. It has such jurisdiction only under section 3, and that exists only in case of conviction.

I am led to this conclusion by study and comparison of sections 2 and 3. Section 2 excludes from admission into the country a person who attempts to bring in a woman for immoral purposes. In terms, it applies only to excluding one who is attempting to get in, but it has been construed to be effective by relation in deporting those who had entered; and I accept that construction. Whether it could, in any event and standing by itself, be a basis for deporting an alien who had established and maintained a domicile in this country for six years, and in a case where the offense had nothing to do with the entry of the person to be deported, it is not necessary in this case to decide.

By section 3, Congress has provided that where the woman imported is an alien, and the person importing is an alien, a felony is committed; and that the person who is convicted of this felony may be deported. Under the general rules of statutory construction (Noyes, C. J., in Wong Yun v. U. S., 181 Fed. 313, 104 C. C. A. 535), the intent seems clear that out of the general class covered by section 2, Congress has selected a particular class named in section 3 and submitted it to a severe punishment, but, in connection therewith, has limited the right to deport to cases where there is a conviction.

The right to prosecute criminally and the right to deport are inconsistent as concurrent rights. They cannot both be exercised at the same time. Congress saw the necessity of making the proceedings successive; and it clearly and probably purposely made the second step depend on the result of the first step.

The conclusion is inevitable that the deportation warrant is void, and that the petitioner should be discharged. An order may be entered accordingly; but the discharge may be stayed for a further period of 10 days to enable the district attorney to perfect an appeal, if desired.

### NOTES.

The following notes cover all pertinent cases found in the Federal Reporter since volume 150. Chinese cases are (generally) not included, because they are sui generis. Rodgers v. U. S. (C. C. A., 3d Circuit) 152 Fed. 346, 81 C. C. A. 454. All relevant Supreme Court cases are reviewed in the citations.

NOTE 1.—The jurisdiction of the federal courts on habeas corpus, in cases where the Department of Commerce and Labor has ordered deportation.

A. INSTANCES WHERE JURISDICTION DISCUSSED AND SUSTAINED.

(1) U. S. v. Nakishima (C. C. A., 9th Circuit) 160 Fed. 842, 87 C. C. A. 616.
(2) U. S. v. Watchorn (C. C.) 160 Fed. 1014 (Ward, Circuit Judge.)
(3) Ex parte Petterson (D. C.) 166 Fed. 539 (Purdy, District Judge).
(4) U. S. v. Williams (D. C.) 173 Fed. 626 (Hand, District Judge). Because determined by a question of law.
(5) Botis v. Davies (D. C.) 173 Fed. 996 (Sanborn, District Judge). See comments on attempt of department to stand on inapplicable laws (pages 1001, 1002).

(6) Ex parte Koerner (C. C.) 176 Fed. 478 (Whitson, District Judge). Question of law involved. Cases reviewed.

(7) Ex parte Sibray (C. C.) 178 Fed. 144 (Orr, District Judge). Discussion on page 150.

(8) Davis v. Manolis (C. C. A., 7th Circuit) 179 Fed. 818, 103 C. C. A. 310. Controlling question held to be one of law.

(9) Sprung v. Morton (D. C.) 182 Fed. 339 (Waddill, District Judge). Cases reviewed on pages 333–335, 339.

### B. Instances Where Jurisdiction Denied.

(1) U. S. v. Watchorn, Re Funaro (C. C.) 164 Fed. 152 (Ward, Circuit Judge). This decision seems not to consider the point that the Secretary had no jurisdiction unless an "admission" was involved. In so far as it seems to hold the Secretary's decision final on a question of law, see Ex parte Saraceno and In re Nicola, infra.

(2) Ex parte Crawford (D. C.) 165 Fed. 830 (Adams, District Judge).

(3) Re Tang Tun (C. C. A., 9th Circuit) 168 Fed. 488, 93 C. C. A. 644.

(4) U. S. v. Williams (D. C.) 175 Fed. 275 (Hand, District Judge).

(5) Edsell v. Mark (C. C. A., 9th Circuit) 179 Fed. 292, 103 C. C. A. 121.

(6) De Bruler v. Gallo (C. C. A., 9th Circuit) 184 Fed. 566. In all of these cases, there was involved what was thought to be an "admission," so giving effect to the finality section, and the controlling question was thought to be one of fact.

### C. Conclusion.

That inferences of law from undisputed facts are to be finally drawn by the courts and not by the department is clearly shown by the two latest cases from the Second circuit:

(1) Ex parte Saraceno (C. C.) 182 Fed. 955 (Ward, Circuit Judge), holding that there is no authority to deport unless the person is a member of one of the statutory classes, and that the decision of the department is not binding if not based on any evidence. "It is impossible to avoid the conclusion that the real ground for the order is that the immigration authorities think the alien is an undesirable citizen, which is a class not excluded by the immigration law."

(2) In re Nicola (C. C. A.) 184 Fed. 322. The question of citizenship, as one of law on undisputed facts, was considered, and the order of the immigration officer reversed.

Note 2.—The case of an alien who has a domicile in the United States, but returns to his native country, and whose re-entry into the United States is challenged.

### A. Instances Where Admitted.

(1) Rodgers v. U. S. (C. C. A., 3d Circuit) 152 Fed. 346, 81 C. C. A. 454. Had resided in U. S. four years: returned to native country four months. Act of 1903 is considered, but upon reasons applicable to act of 1907.

(2) U. S. v. Nakishima (C. C. A., 9th Circuit) 160 Fed. 842, 87 C. C. A. 646. After two years' residence in United States, had been in native country two years.

(3) Sprung v. Morton (D. C.) 182 Fed. 330 (Waddill, District Judge). Nine months in native country, after several years in United States. See page 337, for review of cases.

### B. Instances of Exclusion.

(1) Taylor v. U. S. (C. C. A., 2d Circuit), 162 Fed. 1, 81 C. C. A. 197. This case discusses whether the statute covers an alien who is not also an immigrant. It was by a divided court, has been doubted by the Circuit Court of Appeals for the Ninth Circuit (160 Fed. 842), and reversed (on another point) by the Supreme Court (207 U. S. 120, 28 Sup. Ct. 1, 52 L. Ed. 95).

(2) Re Funaro (C. C.) 164 Fed. 152 (Ward, Circuit Judge). In native country for five months, after being in United States six years.

(3) Ex parte Crawford (D. C.) 165 Fed. 830 (Adams, District Judge). Circumstances not stated.

(4) U. S. v. Hook (D. C.) 166 Fed. 1007 (Morris, District Judge). A return to native country for four days only.

(5) Ex parte Peterson (D. C.) 166 Fed. 536 (Purdy, District Judge). Nine months in native country, after five years in United States.

(6) Looe Shee v. North (C. C. A., 9th Circuit) 170 Fed. 566, 95 C. C. A. 646. This case holds that the admission continues inchoate until the end of the specified probationary period. It does not relate to a domicile once perfected.

(7) U. S. v. Villet (C. C.) 173 Fed. 500 (Holt, District Judge). The result reached depended on the departmental considerations stated.

(8) Ex parte Hoffman (C. C. A., 2d Circuit) 179 Fed. 839, 103 C. C. A. 327. A return to Russia for three months, after three years in United States.

### C. Conclusion.

The rule seems fairly settled in the Second circuit that the second entry is to be treated as a new original, and in the Third and Ninth, to the contrary. Judge Taylor's opinion in U. S. v. Aultman (D. C.) 143 Fed. 922, affirmed in 148 Fed. 1022, 79 C. C. A. 457, indicates that the latter view is the law of this circuit. It concerns a contract laborer, and an older law, but I see no distinction in principle.

It is to be noted also that Lewis is ordered deported to Russia, and his entry from Russia was in 1904. If his crossing of November, 1910, was the unlawful admission, he should have been deported to Canada.