UNITED STATES ex rel. REINMANN v. MARTIN.

(District Court, W. D. New York. February 26, 1912.)

1. ALIENS (§ 54*)—DEPORTATION PROCEEDINGS—PLEADINGS—EVIDENCE.

The rule obtaining in criminal procedure need not be followed in deportation proceedings before immigration officers as to the taking of testimony, and formal pleadings are not required; but the examination, though summary, must afford the alien a fair opportunity to establish his right to enter or remain in the United States.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

2. HABEAS CORPUS (§ 29*)—DEPORTATION PROCEEDINGS—INVALID PROCEEDINGS.

Where an alien in deportation proceedings was denied due process of law, in that he was not afforded a fair opportunity to establish his rights to enter or remain in the United States, he could avail himself of a writ of habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 29.*]

3. ALIENS (§ 51*)—DEPORTATION—GROUNDS.

A citizen of the United States, while visiting in a foreign country, induced a citizen thereof to follow him to the United States and there become his wife. On their arrival in the United States he informed her that it was unnecessary to have a ceremony of marriage performed, that it was customary to merely enter into a contract to live together as man and wife, and, believing him, she lived and cohabited with him, and was regarded as his wife by their neighbors. On learning that he had deceived her, she demanded that he marry her, and on his refusal to do so she left him, and obtained judgment for breach of promise to marry. *Held*, that she could not be deported on the ground that she entered the United States for an immoral purpose.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 111; Dec. Dig. § 51.*]

4. ALIENS (§ 49*)—DEPORTATION—GROUNDS.

An alien, free from mental or permanent physical disability, and possessing means and friends, may not be deported on the ground that she procured her admission into the United States by false statements as to her relationship to a citizen, since such representation was collateral to the right of deportation on the ground that she was likely to become a public charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107; Dec. Dig. § 49.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Habeas corpus by the United States, on the relation of Bertha Rein-mann, against Isaac Martin, to obtain the release of relator from custody under a deportation warrant. Writ sustained, and relator discharged from custody, on giving bond in the event of an appeal by respondent.

Wile & Oviatt, for relator.

John Lord O'Brian, U. S. Atty., and William Palmer, Asst. U. S. Atty.

HAZEL, District Judge. The relator, Bertha Reinmann, alleges that she is unlawfully restrained of her liberty by the respondent, a United States inspector of immigration, who charges her with having violated the immigration statute, passed February 20, 1907 (Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1909, p. 447]), and the acts amendatory thereof. The respondent contends that the relator should be deported to the country whence she came, on the ground that she is an alien who unlawfully secured admission to the United States by means of false and misleading statements, thereby entering without inspection. It appears that the relator was imported into the United States from Switzerland on October 2, 1910, by one Dominick Oeschger, a citizen of this country, and that she lived with him as his mistress and concubine at Rochester, N. Y., until on or about July 15, 1911, when she was taken into custody under a warrant charging that she entered the United States for an immoral purpose, and that at the time of her admission she was a person likely to become a public charge. Following her apprehension, she was examined before the inspector of immigration, and the evidence adduced is attached to the return, and, together with certain documents, has been treated by me as the proofs upon this hearing. The warrant upon which the relator was taken into custody, and by which the Commissioner of Immigration was commanded to grant her a hearing, states that she entered the United States for an immoral purpose; while the acting Secretary of Commerce and Labor, upon briefs submitted to him after the hearing, found that she secured admission by means of false and misleading statements. The relator contends that, not having been apprised of any other charges than those contained in the warrant, she has not had due process of law, and that the order of deportation is illegal.

[1, 2] It is well settled that in this class of examinations before the Secretary of Commerce and Labor, or an immigration inspector, the rules which ordinarily obtain in criminal procedure need not be applied or followed, and formal pleadings are not required, as the taking of testimony or statements of witnesses is not surrounded by the limitations and barriers of judicial proceedings. In re Jem Yuen (D. C.) 188 Fed. 353. The hearings and examinations, though summary, must nevertheless afford the alien fair opportunity to establish his right to enter the United States, or remain therein after entry; and if such fair opportunity has not been accorded, he has not had due process of law, and may, for relief, avail himself of a writ of habeas corpus. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct.

644, 49 L. Ed. 1040; Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; United States v. Sibray (C. C.) 178 Fed. 144. But I do not deem it necessary to decide the controversy strictly on the ground of failure to accord the relator a fair or proper hearing.

[3] By her testimony, in so far as is material, it appears without dispute that Oeschger, a man more than 60 years of age, while visiting in Switzerland, requested that she marry him, to which she finally consented, and at his solicitation came with him to the United States on the steamship Lapland under a promise of marriage, and believing that upon her arrival he would marry her. He informed her after her arrival that it was unnecessary to have a ceremony of marriage performed; that it was the custom in this country to merely enter into a contract to live together as man and wife; and, believing him, she lived and cohabited with him, and was regarded as his wife by their neighbors. On learning that Oeschger had deceived her, she immediately demanded that he marry her, and upon his refusal to do so she left him, and since then, except during a period of illness, has supported herself by nursing.

It was stated by counsel, dehors the record, that after leaving Oeschger she brought an action against him to recover damages for breach of promise of marriage, and that the action was tried before a jury and determined in her favor. Such determination, in an action wherein her personal conduct, motive, and object in leaving her native country received careful scrutiny, has properly been accepted by the acting Secretary of Commerce and Labor to negative the specific charge set out in the warrant. However that may be, the presumption is that, in disagreeing with the findings of the immigration inspector, who was not required to make any findings, he did not regard the evidence sufficient to justify the exclusion on the ground that the relator entered the United States for an immoral purpose.

The question therefore arises whether the evidence shows that she procured admission by materially false and misleading statements, and whether she may now be excluded on that ground. The respondent postulated that, if the false statements had not been made at the time of admission, the government inspector at the port of entry would have made a more searching inspection, that would have ascertained that she was likely to become a public charge and subject to deportation under the provisions of the act. This assumption, however, is merely speculative, and does not follow from the evidence. The reasonable probabilities are that, had she truthfully answered the questions as to her relationship to Oeschger, his plans toward her would have become known, and perhaps he would have married her immediately, in which event she would have taken the nationality of her husband. Upon the question of whether she made false and misleading statements, the evidence attached to the return shows the following:

"Q. When landed in New York, did you not say that you were Dominick Oeschger's niece? A. Dominick Oeschger said that I was his niece, and that he would take care of me, and that I would not become a public charge. Q. Did

you not tell the immigration officers that you were his niece? A. No, sir. Q. Were you not detained for a short time on the vessel, and did you not say that you wanted to go with your uncle? A. Yes; I did say that. Q. Then you did admit to the immigration officer that you were his niece? A. Yes, sir."

Her quoted testimony fairly indicates that the contradictory statement was prompted by the attitude of Oeschger, who doubtless induced her during her detention to make such false statement in aid of his purpose to effectuate her admission. The statement, it will be perceived, related wholly to her asserted kinship to Oeschger, and had no material bearing on her right to enter, or the likelihood of her becoming a public charge. The case of Lewis v. Frick (C. C.) 189 Fed. 146, practically holds that where false and misleading statements are made, which do not of themselves concern the right of admission, they are collateral to the right of deportation, and an alien cannot be deported on account of them.

[4] The evidence further shows that the relator is free from mental or permanent physical disability. She is 26 years of age, follows the occupation of nursing, has secured a substantial judgment for damages against Oeschger, has funds and friends, and there is no indication whatever that she is likely to become a public charge. The power and authority vested by Congress in immigration officers are of such great responsibility that I hesitate to disagree herein with the conclusions of the acting Secretary of Commerce and Labor upon the evidence; and if the said false statement were material, or if it were a representation which bore directly upon one of the causes for which she might be excluded under the act, or, indeed, if the right to exclude her rested on conflicting testimony, I would sustain the finding; but, as the record stands, there is no evidence to show that the relator belongs to the excluded class, and it was error of law to so hold.

The writ is sustained, and an order to that effect may be entered, save that, if the respondent appeals within 10 days after receiving notice of the entry of the order of discharge, the relator must give a bond, with surety, in the sum of $250, pursuant to Supreme Court rule 34, conditioned to appear and answer the judgment of the Circuit Court of Appeals.

So ordered.