Ex parte POULIOT et al.

(District Court, E. D. Washington, N. D. April 16, 1912.)

Nos. 1,345, 1,346.

1. ALIENS (§ 18*)—EXCLUSION—AUTHORITY OF CONGRESS.

Congress may exclude aliens of a particular race or class from the United States, prescribe the terms and conditions on which aliens may immigrate to or remain in the United States, establish regulations for sending out of the country such aliens as come into or remain in violation of law, and may commit the enforcement of such laws to the executive officers of the government without judicial intervention or interference.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 70–72; Dec. Dig. § 18.*]

2. ALIENS (§ 54*)—EXCLUSION—DEPORTATION—WARRANT.

A warrant for the arrest or deportation of an alien need only comply substantially with the law and need not conform to all the niceties or technicalities of criminal pleading.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

3. ALIENS (§ 54*)—HABEAS CORPUS (§ 92*)—DEPORTATION—FINDINGS.

The findings of the executive department, after a fair hearing in deportation proceedings, are binding on the court as to questions of fact, and on habeas corpus proceeding the first inquiry is, has a fair hearing been accorded to petitioner by the executive officers, for, if so, all further inquiry is foreclosed.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54;* Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. § 92.*]

4. ALIENS (§ 54*)—DEPORTATION—WARRANT.

A warrant of arrest and deportation warrant, charging that an alien had been found unlawfully in the United States, that he was a member of the excluded classes in that he procured, imported, or brought into the United States a woman or girl for purposes of prostitution, were sufficient without stating the name of the woman or the time or place where she was brought in.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

5. ALIENS (§ 46*)—DEPORTATION—IMPORTING PROSTITUTES.

An alien may be deported for bringing prostitutes into the United States for purposes of prostitution without having first been convicted of the crime of such importation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. § 46.*]

6. ALIENS (§ 54*)—DEPORTATION—IMPORTATION—PROSTITUTES.

A warrant of arrest of an alien in deportation proceedings recited that she entered the United States at Eastport, Idaho, in 1908 for purposes of prostitution, while the warrant of deportation charged an entry at Detroit, Mich., in 1911. Both warrants, however, charged that subsequent to her entry into the United States she was found practicing prostitution. Held that since such charge is made a distinct ground for deportation under Exclusion Act (Act March 26, 1910, c. 128, § 2, 36 Stat. 264 [U. S. Comp. St. Supp. 1911, p. 502]), and the time of deportation is not limited to three years from the date of entry, the variance was immaterial.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. ALIENS (§ 54*)—DEPORTATION—HEARING—EX PARTE AFFIDAVITS.**

Aliens against whom deportation proceedings were instituted were not deprived of a full and fair hearing before the executive officers of the government because the inspector took certain affidavits ex parte, in the absence of the aliens and reported certain facts communicated to him by third persons to the department, so as to entitle the aliens to release on habeas corpus; it appearing that they had in fact entered the country in violation of the exclusion laws and were living in the United States unlawfully.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

**8. ALIENS (§ 54*)—DEPORTATION—EXCLUDED CLASS—EVIDENCE.**

In proceedings to exclude certain aliens, evidence *held* to warrant a finding that one of them was a prostitute, and that the other profited by such prostitution, and that both were therefore subject to exclusion.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

**9. ALIENS (§ 53*)—EXCLUSION—VOLUNTARY ABSENCE ABROAD—RETURN.**

When an alien prostitute once steps beyond the borders of the United States for any purpose, however temporary or transitory, she has no right to return to resume her illegal calling.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

In the matter of the application of Adelard Pouliot and Blanche Robinson, alias Masse, alias Pouliot, for writs of habeas corpus Writs quashed, and petitioners remanded.

William C. Meyer, for petitioners.

Oscar Cain, U. S. Atty., and E. C. Macdonald, Asst. U. S. Atty., for respondent.

RUDKIN, District Judge. Blanche Masse immigrated from the Dominion of Canada to the United States on the 3d day of May, 1903. At that time she was and still is an alien. She had practiced prostitution for about two years prior to her immigration hither, and continued so to do in this country until the summer of 1908. She then returned to the Dominion of Canada, where she practiced prostitution until the latter part of December, when she again returned to the United States. She was denied admission at Marcus, Wash., but later gained admission at Eastport, Idaho. Two or three days after her return to this country, or on the 30th day of December, 1908, she married one Adelard Pouliot in the city of Spokane. She claims that she led a moral life for about nine months after this marriage. She then left or deserted her husband and again practiced prostitution for some time in the cities of San Francisco, Portland, Spokane, and at other places. She next purchased a lot at Ione, Wash., after returning to her husband, and constructed a building thereon to be used as a house of prostitution. She conducted this house as a house of prostitution from June, 1910, until the latter part of July, 1911. She and Pouliot then made a visit to Montreal, Canada, where they remained for 2½ months, returning to Spokane, Wash., by way of De-

troit, Mich., in October, 1911. The next day after her return she went to Ione and took possession of the house of prostitution formerly occupied by her, and there remained until some time in December of the same year. In her preliminary statement under oath, to the immigration inspector, she admitted that she opened the house of prostitution at Ione on her return from Montreal and did not close it until the 18th day of December following. Later she denied this, but admitted that during that period she had paid a fine for conducting the house of prostitution, and that she was examined by a physician under some ordinance or regulation which is applicable to common prostitutes only.

Adelard Pouliot immigrated to the United States from the Dominion of Canada in 1904 and arrived in the city of Spokane in 1906. Since that time he has been employed as a barkeeper, or engaged in the saloon business. He, too, is an alien. As already stated, he married the Masse woman on December 30, 1908, and accompanied her back to Montreal in 1911, paying her fare and traveling expenses. He admits that he loaned her $500 to build a house of prostitution at Ione, that the house and lot were paid for from money derived from the practice of prostitution, or from conducting a house of prostitution, and that the title to the property now stands in their joint names.

Section 2 of the Immigration Act of February 20, 1907, c. 1134, 34 Stat. 898 as amended by section 1 of the Act of March 26, 1910, c. 128, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 501), declares that the following classes of aliens shall be excluded from the United States:

"* * * Prostitutes, or women or girls coming into the United States for the purpose of prostitution or for any other immoral purpose; persons who are supported by or receive in whole or in part the proceeds of prostitution; persons who procure or attempt to bring in prostitutes or women or girls for the purpose of prostitution or for any other immoral purpose. * * *"

Section 3 of the act of 1907, as amended by section 2 of the act of 1910, declares that:

"Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute, or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects or promises to protect from arrest any prostitute shall be deemed unlawfully in the United States and shall be deported in the manner provided by sections twenty and twenty-one of this act."

Sections 20 and 21 of the act prescribe the mode of deportation.

On the 21st day of November, 1910, the Secretary of Commerce and Labor issued his warrant to the Commissioner of Immigration at Seattle, Wash., or to any immigration inspector in the service of the United States, reciting that from the evidence submitted to him it appeared that the alien Blanche Masse, who landed at the port of Eastport, Idaho, on the 27th day of December, 1908, has been found in the United States in violation of the act of Congress approved Feb-

ruary 20, 1907, as amended by the act approved March 25, 1910, to wit:

"That the said alien is a prostitute and was such at the time of entry; that she entered the United States for the purpose of prostitution or other immoral purpose, and that she has been found an inmate of a house of prostitution and practicing prostitution subsequent to her entry into the United States."

And the officer to whom the warrant was directed was commanded to take her into custody and grant her a hearing to enable her to show cause why she should not be deported in conformity with law.

On the same day a similar warrant was issued reciting that from the evidence submitted it appeared that Adelard Pouliot has been found in the United States in violation of the acts of Congress aforesaid, to wit:

"That the said alien is a member of the excluded classes, in that he procured, imported, or brought into the United States a prostitute or woman or girl for the purpose of prostitution or other immoral purpose"—and directed a hearing in like manner.

Pursuant to these warrants, the two aliens were apprehended, and on the 20th day of December, 1911, their preliminary statements were taken under oath by Inspector Richardson. They were informed of the nature of the charge against them and of their right to have counsel, of which right they availed themselves. The hearing was continued until January 3, 1912, at the instance of the aliens. At that time testimony was offered in their behalf. Thereafter the inspector made his report recommending their deportation, and on the 17th day of February, 1912, the Secretary of Commerce and Labor issued his deportation warrant reciting that from the proofs submitted to him he had become satisfied that the aliens Adelard Pouliot and Blanche Robinson, alias Masse, alias Pouliot, who landed at the port of Detroit, Mich., or on about the 9th day of October, 1911, have been found in the United States in violation of the act of Congress approved February 20, 1907, as amended by the act approved March 26, 1910, to wit:

"That the said Adelard Pouliot is a member of the excluded classes, in that he imported and brought into the United States a woman for the purpose of prostitution or other immoral purpose; that the said Blanche Robinson, alias Masse, alias Pouliot, is a prostitute and was such at the time of her entry; that she entered the United States for the purpose of prostitution or other immoral purpose; and that she has been found an inmate of a house of prostitution and practiced prostitution subsequent to her entry into the United States, and may be deported in accordance therewith"—and their deportation was thereupon ordered.

The parties are now held pursuant to this warrant and have applied to this court for writs of habeas corpus. The writs issued, and a return has been made setting forth the above-mentioned warrants and all proceedings had before Inspector Richardson and the Secretary of Commerce and Labor.

While there is a hopeless and lamentable conflict of authority in the decisions of the inferior federal courts as to the scope of the inquiry under a writ of habeas corpus in this class of cases, and also

as to the construction of some provisions of the immigration acts, the following propositions are believed to be firmly and finally established:

[1] 1. That Congress may exclude aliens of a particular race or class from the United States, prescribe the terms and conditions upon which aliens may come to this country or remain here, establish regulations for sending out of the country such aliens as come here in violation of law, and such as remain here in violation of law, and may commit the enforcement of such laws to the executive officers of the government without judicial intervention or interference.

[2] 2. That a warrant for the arrest or deportation of an alien need only comply substantially with the law and need not conform to all the niceties and technicalities of criminal pleading.

[3] 3. That the findings of the executive department, after a fair hearing such as the law contemplates, are binding upon the courts, certainly as to questions of fact, if not as to questions of law; and, lastly, that on a habeas corpus proceeding the first inquiry is, has a fair hearing been accorded to the petitioner by the executive officers, for, if so, all further inquiry is foreclosed.

[4] The petitioners challenge the sufficiency of the warrant of arrest, the sufficiency of the deportation warrant, and the regularity and fairness of the hearing given them by the officers of the Department of Commerce and Labor. Both the warrant of arrest and the deportation warrant charge that the alien Pouliot has been found unlawfully in the United States, and that he is a member of the excluded classes, in that he procured, imported, or brought into the United States a woman or girl for the purpose of prostitution or other immoral purpose. Such charge is a sufficient compliance with the law. The alien was fully apprised of the charge against him and was given full opportunity to defend against it. The claim that the charge should state the name of the woman brought in and the time and place where she was brought in is not well founded. Ex parte George (D. C.) 180 Fed. 785; Ex parte Michele (D. C.) 188 Fed. 449.

[5] The claim that he cannot be deported until after conviction of the crime of importing the woman into this country, and that the warrant should charge such conviction, is without merit. Section 2 of the act of 1910 excludes persons who have been convicted of, or admit having committed, a felony, or other crime or misdemeanor involving moral turpitude; but no such degree or character of proof is required in the case of those who procure or attempt to bring in prostitutes, or women or girls for the purpose of prostitution, or for other immoral purposes.

The case of Lewis v. Frick (C. C.) 189 Fed. 149, cited by the petitioners, was recently reversed by the Circuit Court of Appeals for the Sixth Circuit in an opinion filed February 13, 1912, 195 Fed. 693, 115 C. C. A. ——.

[6] There is a variance between the warrant of arrest and the warrant of deportation in the case of the Masse woman; the former reciting that she entered the United States at Eastport, Idaho, in the year 1908, for the purpose of prostitution, while the latter charges an entry at Detroit, Mich., in the year 1911. Both warrants charge,

however, that subsequent to her entry into the United States the woman was found an inmate of a house of prostitution, and practicing prostitution. The latter is a distinct ground for deportation under section 3 of the act of 1910, and the time of deportation is not limited to three years from the date of entry. Chomel v. United States, 192 Fed. 117, 112 C. C. A. 461, and cases cited.

Furthermore, the woman unlawfully entered this country on both dates and at both places. The warrants are therefore sufficient.

[7] The claim that the petitioners were not accorded a full and fair hearing before the executive officers is based upon the fact that the inspector took certain affidavits ex parte, and in the absence of the petitioners, and reported certain facts communicated to him by third persons, to the department. There is no denial of the fact that the petitioners were given a full and fair opportunity to be heard, and that all testimony offered in their behalf was received. What amounts to such a full and fair hearing as the law contemplates has never been defined by the courts. Perhaps the practice of submitting ex parte affidavits and of reporting independent facts is not to be commended; but the mere fact that such a report has been made, or such affidavits transmitted, will not entitle an alien to a release on habeas corpus, unless it appears that he has, or may have been, prejudiced thereby. No such prejudice can be predicated on the acts of the inspector in this case. The ex parte affidavits taken, and the ex parte statements made, simply tend to confirm facts which appear in the testimony of the petitioners themselves, and could not change the result. Were I to exclude all incompetent testimony and determine the case de novo on the competent testimony alone, I could not reach a different conclusion.

[8] Admittedly the woman is an alien and was found in this country an inmate of a house of prostitution and practicing prostitution after her entry. This was her principal occupation during nearly all the time since the passage of the act of 1910. The fact that she reformed every time she crossed the international boundary is not material and is not sustained by the proof. She claims that she reformed twice; but if she did she fell twice, and what assurance have we that she will not fall again. The vilest sinner may return, and a prostitute is not without the pale of redemption; but her promises of reformation should not be accepted too lightly in this class of cases. That reformation which exists only while she is in transitu is no reformation, and promises which are only kept while crossing state and international boundaries, are unavailing.

The case against the alien Pouliot is equally clear. He manifestly imported this woman into the United States for the purpose of prostitution and for immoral purposes, and, more than this, he admittedly shared in and derived benefit from her earnings as a prostitute, for he is admittedly the owner of an undivided half interest in the property purchased by her illgotten gains. It may be claimed that her entries into the United States in 1908 and 1911 were not illegal or prohibited, by reason of her previous residence in this country; but with this contention I cannot agree.

[9] I admit there is a conflict of authority upon this question; but in my opinion, when an alien prostitute once steps beyond our borders for any purpose, however temporary or transitory, she has no right to return here to resume her illegal calling. Such is the plain mandate of the law, and such is the great weight of authority. It has been so held in the Second circuit, in Ex parte Hoffman, 179 Fed. 839, 103 C. C. A. 327; in the Third circuit, in Sibray v. United States, 185 Fed. 401, 107 C. C. A. 483; in the Fourth circuit, in United States v. Sprung, 187 Fed. 903, 110 C. C. A. 37; in the Seventh circuit, in Prentis v. Petros Stathakos (C. C. A.) 192 Fed. 469; in the Sixth circuit, in Frick v. Lewis, supra.

For the foregoing reasons, I am of opinion that these two aliens are unlawfully in the country, and no mere technicalities should stand in the way of their deportation. The writs of habeas corpus are quashed, and the petitioners remanded.