### Ex parte GREGORY et al.

(District Court, W. D. Washington, N. D.   January 27, 1914.)

1. HABEAS CORPUS (§ 92*)—DEPORTATION PROCEEDINGS—SCOPE OF REVIEW.

In habeas corpus proceedings to review a judgment directing the deportation of certain aliens, the court is limited to ascertaining whether the petitioners were denied a hearing and whether the facts found constituted a statutory ground for exclusion; the immigration officers being unauthorized to exercise a mere arbitrary power, free from judicial review.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. § 92.*]

2. ALIENS (§ 54*)—EXCLUSION—GROUNDS—REVIEW.

Where certain alien farm laborers applied to enter the United States, findings of the immigration board that they were persons likely to become a public charge because there was no work for them in the United States, because they had but a limited amount of money insufficient to maintain them during the winter, and because there were 800 to 1,000 Russians unemployed in one of the cities of the state, and thousands of other nationalities in the same condition, that the supply of common laborers far exceeded the demand, and that any addition to the unemployed should be guarded against and alien laborers not permitted to enter at that time, was insufficient to justify their exclusion.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Application by K. Gregory and others for a writ of habeas corpus to secure a discharge from certain deportation warrants in immigration proceedings. Granted.

Parker & Kalina, of Seattle, Wash., for petitioners.
Clay Allen, U. S. Atty., of Seattle, Wash., and G. P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash., for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NETERER, District Judge. K. Gregory and seven others filed a petition praying a writ of habeas corpus, alleging that they are in good faith seeking admission into the United States to make the United States their permanent home; that they do not come within any of the classes prohibited admission. A show cause order was issued, and the Commissioner of Immigration made return setting forth in substance: That the petitioners sought admission and were held for special inquiry by the immigrant inspector, and a board of special inquiry was organized as provided by law, and—

"that on December 23, 1913, after a full hearing (a duplicate report of which appears in the immigration files of this cause and is marked Exhibit A and made a part of this return), the board decided to reject the aliens on the ground that they were persons who were likely to become a public charge, for the following reasons: First. Because they are common or farm laborers, and there is no work for them in the United States. Second. Because they have but a limited amount of money, insufficient to maintain them during the winter. Third. Because there are 800 to 1,000 Russians unemployed in Seattle, and thousands of other nationalities in the same condition, and reports from the interior are to the effect that the supply of common labor is far in excess of demand. Fourth. That any addition to the unemployed should be guarded against, and alien laborers should not be permitted to enter the United States at this time."

That the petitioners appealed to the Secretary of Labor, who affirmed the decision of the board of special inquiry.

The petitioners move that they be forthwith discharged for the reasons:

"(1) That the return shows that they are detained and restrained of their liberty for unlawful reasons and contrary to the statutes in such cases made and provided; (2) that the special examining board and the Secretary of Commerce and Labor and said Commissioner exceeded their authority and jurisdiction; (3) that the alleged reasons for detaining said petitioners are irrelevant, immaterial, and not supported by evidence, and are frivolous and sham; (4) that said petitioners had all the personal qualifications required of them by the statutes, and to entitle them to immediate and unconditional discharge."

[1] This court held in In re Moola Singh (D. C.) 207 Fed. 780, that the jurisdiction of this court is limited to ascertaining whether the petitioners were denied a hearing, and, if a hearing has been accorded, the court is precluded from a re-examination of the issue presented merely because it is contended that the conclusion of the immigration officers based upon the testimony was wrong. In the Moola Singh Case a trial was had, and the conclusion of the examining board was that the aliens be excluded from admission under the laws of the United States. The conclusion of the board found delinquency in the personal qualifications of the applicants which brought them within the exclusion provisions of the act. This court cannot examine into the testimony produced upon the hearing in this case before the special examining board, nor enter upon a re-examination of the facts. This court is bound by the facts as found by the board of special inquiry.

[2] Do the facts as found bring the petitioners within the exclusion provisions of the act? Are the petitioners qualified to enter under the findings of the board, and is the act of the board beyond its jurisdic-

tion, and does the personal condition of the applicants, as found, preclude their exclusion?

Section 1 of the Immigration Act of February 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1911, p. 499), reads:

"That there shall be levied, collected, and paid a tax of four dollars for every alien entering the United States."

Section 2 of the act provides who are to be excluded, among whom are "persons likely to become a public charge."

Section 10 of the act provides:

"That the decision of the board of special inquiry, hereinafter provided for, based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens affected with tuberculosis or with a loathsome or dangerous contagious disease, or with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section two of this act."

Section 24 of the act provides:

" * * * Immigration officers shall have power to administer oaths and to take and consider evidence touching the right of any alien to enter the United States, and, where such action is necessary, to make a written record of such evidence."

A provision for the punishment of any persons who shall knowingly or willfully give false oaths or swear to any false statement is made, and it is also provided that the decision of such officer in admitting an alien shall be subject to challenge by any other officer, and such challenge shall operate to take the alien, whose right to land is challenged, before a board of special inquiry for its investigation. It is further provided:

"Every alien who may not appear to the examining immigrant inspector at the port of arrival to be clearly and beyond doubt entitled to land shall be detained for examination in relation thereto by a board of special inquiry."

"Sec. 25. * * * All hearings before boards shall be separate and apart from the public, * * * and the decision of any two of the board shall prevail,—but either the alien or any dissenting member of said board may appeal * * * to the Secretary of * * * Labor * * * that in every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of the appropriate immigration officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of * * * Labor."

Under section 2 an alien "likely to become a public charge" is excluded; and under section 25 the decision of the board of special inquiry is final where the alien is by law excluded. The findings and conclusions of the board with relation to the petitioners, however, eliminate all physical and mental deficiencies legislated against. Shall it be said, under such a record, that the examining board can exclude an alien upon the conclusion that he is "likely to become a public charge," when, upon the facts found and reasons given, the applicant is not brought within the provisions of the act excluding him from admission?

In the findings made there is no disqualification personal to the applicants, nor any objection made because of inability to conform to new conditions and relations. They are not excluded by the provi-

sions of the act. The reasons given do not exclude them under the act. These reasons are proper subjects for the consideration of Congress, but they do not authorize the temporary suspension of the Immigration Act, which the adoption of these findings will do. The laws and principles upon which our government rests forbid the exercise of arbitrary power. Immigration officers must act within the powers given. Courts have power to intervene where they exceed their authority. Ex parte Saraceno (C. C.) 182 Fed. 955; Lewis v. Frick (C. C.) 189 Fed. 146; In re Feinknopf (D. C.) 47 Fed. 447; Ex parte Koerner (C. C.) 176 Fed. 479; In re O'Sullivan (C. C.) 31 Fed. 447; United States v. Martin (D. C.) 193 Fed. 795; Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 177, 48 L. Ed. 317.

The petitioners are discharged; but, if within ten days after the filing of this decision the respondent appeals, the petitioners must give recognizance with sufficient surety in the sum of $250 each, conditioned to appear and answer the judgment of the appellate court in accordance with Supreme Court rule 34 (32 Sup. Ct. xiii).